## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN DOE,<br>    Plaintiff, | :<br>:<br>:   CIVIL ACTION NO.<br>:   3:19-CV-00212-WWE<br>: |
| v. | :<br>: |
| FAIRFIELD UNIVERSITY, ET AL,<br>    Defendants. | :<br>:   JULY 2, 2019<br>: |

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

THE DEFENDANTS,
FAIRFIELD UNIVERSITY,
KAREN DONOGHUE, AND
CHRISTINE BROWN

*By: /s/ James M. Sconzo*
James M. Sconzo (ct04571)
Jonathan C. Sterling (ct24576)
CARLTON FIELDS, P.C.
One State Street, Suite 1800
Hartford CT 06103
Phone: 860-392-5000
Fax: 860-392-5058
jsconzo@carltonfields.com
jsterling@carltonfields.com
*Their attorneys*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ iii

I.  PRELIMINARY STATEMENT ............................................................................... 1

II.  BACKGROUND .......................................................................................................... 2

    A.  The University's Commitment To Non-Discrimination........................................ 2

    B.  The Sexual Misconduct Complaint Against Plaintiff............................................ 4

    C.  The First Hearing ................................................................................................... 5

    D.  The Second Hearing................................................................................................ 6

III.  ARGUMENT ................................................................................................................ 7

    A.  The Claims Asserted .............................................................................................. 7

    B.  Legal Standard For A Motion To Dismiss............................................................. 7

    C.  Plaintiff Has Not Plausibly Alleged "Selective Enforcement" Under Title IX ..... 8

    D.  Plaintiff's State Law Claims Should Be Dismissed Because He Does Not
        Plausibly Allege Any Claim. ................................................................................ 11

        1.  The University's Actions Are Entitled To Deference............................... 11

        2.  Plaintiff's Breach Of Contract Is Not Plausible...................................... 16

            a.  Plaintiff Has Not Plausibly Alleged Any Breach Of
                Contract .......................................................................................... 16

            b.  Plaintiff's Contract Claims Are Truly Disguised
                Negligence Claims. ........................................................................ 22

            c.  The Handbook Disclaimer Precludes Liability............................. 24

        3.  Plaintiff's Implied Covenant Claim Is Not Plausible. ............................. 25

        4.  Plaintiff's NIED Claim Is Not Plausible.................................................. 27

    E.  Plaintiff's Section 504 Claim Should Be Dismissed Because He Does Not
        Plausibly Allege Disability Discrimination. ........................................................ 28

IV.  CONCLUSION............................................................................................................ 30

## TABLE OF AUTHORITIES

### CASES

*Albert v. Carovano,* 851 F.2d 561 (2d Cir. 1988)...................................................................11

*Alexander v. Choate,* 469 U.S. 287 (1985) ...........................................................................29

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ..............................................................................7,8

*Bass v. Miss Porter's School,* 738 F.Supp.2d 307 (D. Conn. 2010)................................. 13-15,18

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)............................................................7,8

*Bercovitch v. Baldwin School Inc.,* 133 F.3d 141 (1st Cir. 1998) ...........................................29

*Brass v. Am. Film Techs., Inc.,* 987 F.2d 142 (2d Cir. 1993) .........................................................2

*Brodsky v. The Mead School,* No. DNX05CV970156788S, 1999 WL 391580
(Conn.Super. Jun. 4, 1999) ................................................................................................13

*Byra-Grzegorczyk v. Bristol-Myers Squibb Co.,* 572 F.Supp.2d 233 (D.Conn. 2008)..................17

*Campbell v. Plymouth,* 74 Conn.App. 67 (2002).....................................................................27

*Christian v. Town of Riga,* 649 F.Supp.2d 84 (W.D.N.Y. 2009)..................................................9

*Craine v. Trinity Coll.,* 259 Conn. 625 (2002).......................................................................14

*Coveney v. President and Trustees of the Coll. of the Holy Cross,* 388 Mass. 16 (1983)....... 13-14

*Daley v. Wesleyan University,* 63 Conn.App. 119 (2001) ........................................................26

*Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629 (1999).................................................9,13

*De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.,* 269 Conn. 424, 433 (2005)............... 25-26

*Doe v. Colgate Univ.,* 760 Fed.Appx. 22 (2d Cir. 2019)............................................................11

*Doe v. Cummins,* 662 Fed.Appx. 437, 454 (6th Cir. 2016) ......................................................18

*Doe v. French,* 458 Fed.Appx. 21 (2d Cir. 2012).....................................................................25

*Doe v. Yale Univ.,* 252 Conn. 641 (2000)..............................................................................12

*Dubinsky v. Meyers, Breiner & Kent, LLP,* No. FBTCV156052685S, 2016 WL 1553008
(Conn. Super. Mar. 29, 2016) .............................................................................................26

*Egbarin v. Hoffmann Assocs.,* No. 3:18-cv-917 (VAB), 2019 WL 1129454
(D. Conn. Mar. 12, 2019)......................................................................................................2

*Eiland v. Wolf,* 764 S.W.2d 827 (Tex. App. 1989)...................................................................25

*Faigel v. Fairfield University,* 75 Conn. App. 37 (2003).......................................................15,18

*Faust v. Connecticut Junior Republic Ass'n.,* No. CV 990336698S, 2000 WL 254570

(Conn. Super. Feb. 23, 2000)..................................................................................15

*Gazo v. City of Stamford*, 255 Conn. 245 (2001)..........................................22-23

*Gally v. Columbia Univ.*, 22 F.Supp.2d 199 (S.D.N.Y. 1998) .......................17,18

*Gaudio v. Griffin Health Services Corp.*, 249 Conn. 523 (1999)........................24

*Green v. Hinds*, 17-CV-5422 (DRH)(ARL), 2018 WL 7063165 (E.D.N.Y. Dec. 10, 2018).........8

*Goodman v. President & Trustees of Bowdoin Coll.*, 135 F.Supp.2d 40 (D.Me. 2001) ..............17

*Gupta v. New Britain General Hospital*, 239 Conn. 574 (1996).............................. 12-16,24,26,27

*Habetz v. Condon*, 224 Conn. 231 (1992) ...........................................................26

*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009).........................................................7

*Hawley Avenue Associates, LLC v. Robert D. Russo, M.D. & Associates Radiology, P.C.*,
130 Conn.App. 823 (2011) ...................................................................................16

*Hope Academy v. Fortier*, No. CV03081072S, 2004 WL 944480
(Conn.Super. Apr. 13, 2004)................................................................................25

*Hope Academy v. Friel*, No. CV030081183S, 2004 WL 1888909
(Conn.Super. Jul. 22, 2004) ................................................................................15

*Jacobs v. The Ethel Walker School*, No. CV020515279S, 2003 WL 22390051
(Conn.Super. Sep. 30, 2003)................................................................................13

*Kent Literary Club of Wesleyan University v. Whaley*, No. CV040104195S,
2004 WL 2361686, (Conn. Super. Sep. 16, 2004)...............................................24

*Kim v. State Farm Fire and Casualty Company*, No. 3:15-cv-879 (VLB),
2015 WL 6675532 (D.Conn. Oct. 30, 2015) ......................................................26

*Kloth-Zanard v. Amridge Univ.*, No. 3:09cv606, 2012 WL 2397161
(D.Conn. Jun. 25, 2012).....................................................................................18

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011)........................2

*Mara v. MacNamara*, No. 3:14–CV–01095 (RNC), 2015 WL 4392956
(D.Conn. Jul. 15, 2015)......................................................................................13

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) ....................2

*McKinstry v. Sheriden Woods Health Care Center, Inc.*, 994 F.Supp.2d 259, 267
(D. Conn. 2014) .................................................................................................27

*Meyers v. Conshohocken Catholic*, No. Civ.A.03-4693, 2004 WL 3037945
(E.D.Pa. Dec. 30, 2004) .....................................................................................30

*Pelletier v. Galske,* 105 Conn.App. 77 (2007), cert. denied, 285 Conn. 921 (2008)....................22

*Perez v. Tedford,* No. SA–13–CV–429–XR, 2013 WL 5740256 (W.D. Tex. Oct. 22, 2013) ......28

*Pickering v. Aspen Dental Management, Inc.,* 100 Conn.App. 793 (2007) .................................27

*Prasad v. Cornell Univ.,* No. 5:15-cv-322, 2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016) ..........10

*Reynolds v. Chrysler First Commercial Corp.,* 40 Conn.App. 725, cert. denied,
 237 Conn. 913 (1996) ..............................................................................................................16,17

*Rolph v. Hobart and William Smith Colls.,* 271 F.Supp.3d 386 (W.D.N.Y. 2017).........................9

*Ruegsegger v. Bd. of Regents of Western New Mexico Univ.,* 154 P.3d 681
 (N.M. App. 2006).........................................................................................................................17

*Selevan v. N.Y. Thruway Auth.,* 584 F.3d 82 (2d Cir. 2009).........................................................7

*School Bd. of Nassau Cty. v. Arline,* 480 U.S. 273 (1987). .........................................................29

*Smith v. Bridgeport Futures Initiative, Inc.,* No. 326697, 1996 WL 493229
 (Conn. Super. Aug. 13, 1996).....................................................................................................24

*Southeast Cmty. Coll. v. Davis,* 442 U.S. 397 (1979)..................................................................29

*Stearns v. Bd. of Educ. for Warren Twp. High Sch. Dist. #121,* No. 99 C 5818,
 1999 WL 1044832 (N.D. Ill. Nov. 16, 1999) .............................................................................29

*Thibodeau v. Design Group One Architects, LLC,* 260 Conn. 691 (2002)...................................27

*Uhl v. Home Depot U.S.A., Inc.,* No. 08–CV–3064(JS)(ETB), 2010 WL 3282611
 (E.D.N.Y. Aug. 13, 2010)........................................................................................................29-20

*Vogel v. Maimonides Academy of Western Conn., Inc.,* 58 Conn. App. 624 (2000)....................13

*Weiner v. Clinton,* 106 Conn.App. 379, cert. denied, 282 Conn. 928 (2008)..............................22

*Young v. Hoffman,* 970 F.2d 1154 (2d Cir. 1992).......................................................................19

*Yu v. Vassar Coll.,* 97 F. Supp. 3d 448 (S.D.N.Y. 2015).............................................................11

*Yusuf v. Vassar Coll.,* 35 F.3d 709 (2d Cir. 1994)...................................................................9,10

## OTHER AUTHORITIES

D. Conn. L. Civ. R. 7 .....................................................................................................................1

Fed. R. Civ. P. 12(b)(6)..................................................................................................................1

Section 504 of the Rehabilitation Act.......................................................................................28-30

Title IX of the Education Amendments of 1972, 20 U.S.C.A. § 1681 *et seq.*...................... passim

Pursuant to Fed. R. Civ. P. 12(b)(6) and D. Conn. L. Civ. R. 7, the Defendants Fairfield University (the "University"), former Dean of Students (now Vice President for Student Life) Karen Donoghue, and former Title IX Coordinator Attorney Christine Brown[1] (collectively, "Defendants"), submit this memorandum of law in support of their Motion to Dismiss a portion of Count I, as well as all of Counts II through V, of Plaintiff's May 30, 2019 Amended Complaint.

## I.    PRELIMINARY STATEMENT

The University is deeply committed to gender equality and eliminating sexual misconduct.  It has clear policies explaining that it does not discriminate on the basis of sex and strict rules against sexual misconduct by faculty, staff and students.  The University's gender neutral Sexual Misconduct Policy makes clear that students may be held accountable for sexual misconduct, and the policy spells-out its clear process to fairly and promptly adjudicate complaints of sexual misconduct brought to its attention.  The factual allegations in Plaintiff's Amended Complaint bear all this out.

Defendants moved to dismiss Plaintiff's original Complaint because it failed to plausibly allege any cause of action against them.  Instead of opposing that motion, Plaintiff has filed an Amended Complaint, trimming certain claims and former defendants from the case.  He also added a barrage of allegations designed to insulate it from another Rule 12(b)(6) challenge.  The Amended Complaint now totals almost one hundred pages and 330 paragraphs, but that heft does not equate with stating viable claims.  The added text includes a variety of conclusory allegations, opinions, hyperbole, and inflammatory statements.  Plaintiff has not accomplished his goal of saving his claims from dismissal.

---

[1] Dean Donoghue and Attorney Brown are collectively referred to as the "Individual Defendants."

Plaintiff's Amended Complaint fails to plausibly allege a Title IX claim on a selective enforcement theory because he does not allege any similarly-situated females who received different discipline.  His state law claims continue to suffer from a variety of infirmities, including that the University is entitled to considerable deference in its disciplinary decisions. Plaintiff has not plausibly alleged any contractual violations, bad faith, or arbitrary or capricious conduct necessary in order to survive dismissal.  Plaintiff's throw-in disability discrimination claim seeks to excuse him from discipline because he was allegedly disabled, but courts have held this is not a proper claim.

For all of these reasons, and others set forth below, all but part of Count I should be dismissed.

## II.    BACKGROUND[2]

### A.    The University's Commitment To Non-Discrimination

The University strictly abides by non-discrimination policies, which prohibit, among other things, discrimination based upon sex in any of the University's programs.  This policy was published to all students in the University's 2017-2018 Student Handbook (the "Handbook"), and stated:

> Fairfield University admits students of any sex, race, color, marital status, sexual orientation, gender identity, religion, age, national origin or ancestry, disability or handicap, to all the rights, privileges, programs, and activities generally accorded or made available to students of the University. It does not discriminate on the basis of sex, race, color, marital status, sexual orientation, gender identity, veteran's status, political ideology, religion, age, national origin or ancestry,

---

[2] "A court considering a motion to dismiss under Rule 12(b)(6)" may consider "facts asserted within the four corners of the complaint," "any documents incorporated in the complaint by reference," and "documents either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit. *Egbarin v. Hoffmann Assocs.*, No. 3:18-cv-917 (VAB), 2019 WL 1129454, at * 3 (D. Conn. Mar. 12, 2019) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). Plaintiff's Complaint relies upon and incorporates by reference many such documents.  Those relevant to this motion are attached as exhibits.  For purposes of the motion, the University treats Plaintiff's factual allegations as true so far as they are consistent with the underlying documents that Plaintiff purports to be characterizing in the Complaint.  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

disability or handicap in administration of its educational policies, admissions policies, employment policies, scholarship and loan programs, athletic programs, or other University-administered programs.

(Handbook, relevant parts of 2017-18 version attached as **Exhibit A**[3], p. 11; Complaint at ¶¶ 34-35, 37.)  The Policies and Procedures section of the Handbook contained the University's Non-Discrimination and Harassment Policy, which set forth detailed procedures for resolving claims of harassment and discrimination, and provides that "[t]he University strongly condemns any unlawful or wrongful discrimination against the rights of others." (*Id.* at 45-46.)  Notably, these policies are gender neutral; they equally prohibited discrimination against both males and females.

The Handbook further demonstrated the University's "commit[ment] to providing students with disabilities an equal opportunity to access the benefits, rights and privileges of its services, programs and activities in an accessible setting." *Id.* at 74; *see also id.* at 16.  In this regard, the Handbook established a detailed procedure for students to request and receive academic and other reasonable accommodations. *Id.* at 73-74.

The Handbook also contained a detailed Sexual Misconduct Policy (the "Original Policy"). *Id.* at 61-73.  "This policy is intended to guide students on the University's general response policy to incidents of sexual misconduct, the resources available to victims of sexual misconduct, and the sexual misconduct prevention initiatives of the University." *Id.* at 61.  The Sexual Misconduct Policy stated the University's "commit[ment] to providing a learning environment free of gender-based discrimination, including sexual harassment." *Id.* at 61.  That policy provided detailed information setting forth reporting resources and procedures for complaints of sexual misconduct, described the investigation procedures and outlined the

---

[3] The Handbook contained the following disclaimer: "The provisions of this handbook are not to be regarded as an irrevocable contract between Fairfield University and its students. The University reserves the right to change any provision or requirement at any time." *Id.* at 1.

disciplinary process.  With respect to disciplinary proceedings, "University procedures are designed to provide a prompt, impartial response for resolution of Title IX sexual misconduct complaints, as well as to provide reasonable remedial measures if it is determined that the sexual misconduct policy has been violated." *Id.* at 72.  The Sexual Misconduct Policy incorporated the disciplinary procedure set forth in the Student Code of Conduct.  *Id.* at 106-07; *see generally id.* at 90-116 (setting forth entire Code of Student Conduct).  These policies applied equally to both male and female students.

Effective January 1, 2018, the University adopted a new Sexual Misconduct Policy (the "New Policy," attached as **Exhibit B**).  The New Policy provides that the determinations as to which policy applies (Original or New) for claims reported prior to January 1, 2018 is in sole discretion of the Title IX Coordinator.  *Id.* at 3.  Additionally, the New Policy maintains the University's strong gender-neutral commitments to non-discrimination and protecting students against sexual misconduct.  The New Policy makes certain procedural changes to the Original Policy related to the disciplinary process, but the key substantive elements of the Original Policy remains unchanged, including the applicability of a preponderance of the evidence standard for sexual misconduct hearings (compare Exhibit A p. 73 with Exhibit B p. 21) and the definitions of the terms "affirmative consent" and "intercourse" (compare Exhibit A pp. 61-62 with Exhibit B pp. 4-6).  Like the Original Policy, the New Policy states that students found responsible for sexual misconduct are subject to discipline up to and including expulsion.  (Exhibit A p. 101, Exhibit B p. 23.)

### B.    The Sexual Misconduct Complaint Against Plaintiff

On September 29, 2017, Plaintiff had sexual intercourse with Jane Roe.  (Amended Complaint at ¶¶ 125-26.)  Plaintiff alleges that the sex was consensual, while Ms. Roe claimed

that it was not. *Id.* at ¶¶ 126, 135.  On December 6, 2018, Ms. Roe made a complaint to the

University's Department of Public Safety ("DPS") alleging sexual misconduct against Plaintiff.

*Id.* at ¶ 135.  On December 11, 2017, Plaintiff was notified of the complaint.  *See* DPS Report,

excerpts attached as **Exhibit C**.  DPS conducted a thorough investigation, including interviews

of Plaintiff and Ms. Roe, and obtaining statements from and/or interviewing seven (7) witnesses,

generating a detailed written report.  *Id.*; Amended Complaint at ¶¶ 135, 138, 141, 148.

Following the investigation, the matter was referred to the University Disciplinary Process, and

Plaintiff and Ms. Roe were instructed not to have contact with each other.  (Amended Complaint

at ¶ 152.)

    **C.**    **The First Hearing**

    The initial disciplinary hearing over the complaint was held on February 9, 2018 (the

"First Hearing") before a Hearing Board.  *Id.* at ¶ 189.  The Hearing Board was comprised of two

(2) male and two (2) female members: Prof. Lane, Ms. Lemieux, Pejay Lucky, Associate

Director of Residential Life, and Andrea Martinez, Assistant Dean.  *See* February 5, 2018 letter

attached as **Exhibit D**.  The First Hearing was conducted in accordance with the Original Policy.

(*See* Amended Complaint at note 45; ¶ 206.)   Plaintiff selected Professor Brian Walker as his

advisor.  Prof. Walker assisted Plaintiff with the process and accompanied him to the First

Hearing.  *Id.* at ¶¶ 192, 196.  Both Plaintiff's and Ms. Roe's advisors wrote questions and

submitted them to be asked by the board chair.  *Id.* at ¶ 201(2)(c).  At the First Hearing, Plaintiff

had a full opportunity to present his case, but the panel found, by a preponderance of the

evidence, that he had engaged in sexual misconduct.  *See id.* at ¶¶ 201, 203.

Plaintiff and Prof. Walker filed an appeal, claiming procedural irregularities in the hearing and investigation processes. *Id.* at ¶¶ 201-04. That appeal was granted and the First Hearing was nullified and a new, *de novo* hearing was scheduled. *Id.*

### D.    The Second Hearing

A second hearing was held on March 9, 2018 (the "Second Hearing"). *Id.* at ¶ 208. The Second Hearing proceeded under the New Policy, which was a decision within the sole discretion of Attorney Brown as Title IX Coordinator. (*See* New Policy, p. 3.) The Second Hearing Board included three (3) males and two (2) females: Michael G. Tortora, Assistant Vice President for Student Affairs, Thomas Armstrong, Director of Enterprise Computing, Dawn DiBiase, Assistant Dean of Academic and Career Development, Allen Gibson, Associate Director of Athletics/Facilities and Operations, and Loren Testani, Manager of Employment. (*See* e-mail attached as **Exhibit E**)

Plaintiff does not allege any limitation on his ability to present his case during the Second Hearing. Plaintiff does not allege that any of the Board members from the Second Hearing had any conflict of interest or bias. Plaintiff has not alleged any gender-biased statements from anyone at the University. Plaintiff does not allege that the Second Hearing Board was comprised of a majority of women. In fact, Plaintiff has not made any allegations about those who served on the Board for the Second Hearing.

The Second Hearing Board found Plaintiff responsible for violating the nonconsensual sexual intercourse policy. (Amended Complaint, ¶ 220.) As a result, Plaintiff was notified that he was restricted from all University activities, but he was permitted to continue his coursework remotely and graduate with his class. *Id.* at ¶ 223. What Plaintiff doesn't allege is that this sanction was far less severe than it could have been. Based on the finding of non-consensual

intercourse, Plaintiff could have been expelled immediately and not permitted to graduate.

Plaintiff appealed the decision, arguing that there was a new witness, but his appeal was denied.

*Id*. at ¶ 243.

Plaintiff successfully completed his studies, graduated from the University on schedule,

and was accepted into multiple post-graduate programs.  *Id*. at ¶ 27.

## III.    ARGUMENT

### A.    The Claims Asserted

In his Amended Complaint, Plaintiff asserts the following causes of action:

| Count | Cause of Action |
|-------|-----------------|
| I | Violation of Title IX |
| II | Breach of Contract |
| III | Breach of the Implied Covenant of Good Faith and Fair Dealing |
| IV | Disability Discrimination – Section 504 of the Rehabilitation Act |
| V | Negligent Infliction of Emotional Distress ("NIED") |

Counts I through IV are directed to the University, while Count V is directed to the

Individual Defendants.  The portion of Count I alleging a "selective enforcement" theory under

Title IX should be dismissed, as well as Counts II through V, in their entirety.

### B.    Legal Standard For A Motion To Dismiss

To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007));

*Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 95 (2d Cir. 2009).  Two working principles underlie

the Supreme Court's plausibility standard.  *See id*.  "First, although 'a court must accept as true

all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions'

and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.'"  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556

U.S. at 663).  At the same time, the Supreme Court reiterated that the Rule 8 pleading threshold "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 550).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.  Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U .S. at 570.  "While the *Twombly* plausibility standard does not prevent a plaintiff from pleading facts "upon information and belief" where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible...such allegations must be accompanied by a statement of the facts upon which the belief is founded." (Citations quotation marks omitted.) *Green v. Hinds*, 17-CV-5422 (DRH)(ARL), 2018 WL 7063165, at *7 (E.D.N.Y. Dec. 10, 2018).

### C.   Plaintiff's Has Not Plausibly Alleged "Selective Enforcement" Under Title IX.

Plaintiff has not plausibly alleged that the University selectively enforced discipline for sexual misconduct to the detriment of male students.

"Title IX claims concerning disciplinary proceedings generally follow either an 'erroneous outcome' theory or a 'selective enforcement' theory." *Doe v. Colgate Univ.*, 760 Fed.Appx. 22, 30 (2d Cir. 2019).  Plaintiff asserts claims based upon both theories.  The erroneous outcome claim is not challenged as part of this motion.  However, the "selective enforcement" claim has not been adequately pled and should be dismissed.

"[T]o state a selective enforcement claim, a plaintiff must plausibly allege that 'regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender.' " *Rolph v. Hobart and William Smith Colls.*, 271 F.Supp.3d 386, 404-05 (W.D.N.Y. 2017), quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). "[W]holly conclusory allegations [will not] suffice for purposes of Rule 12(b)(6)." *Yusuf*, 35 F.3d at 715. Where a male plaintiff attacks the disciplinary process he received, the complaint must include plausible allegations that similarly situated female students were treated differently under that university's disciplinary process. *See Rolph*, 271 F.Supp.3d at 403 (dismissing selective enforcement claim because "the complaint fails to include any allegations that female students were treated differently under HWS's disciplinary process"); *Christian v. Town of Riga*, 649 F.Supp.2d 84, 94 (W.D.N.Y. 2009) (dismissing selective enforcement claim because plaintiff failed to plead facts showing disparate treatment to similarly situated individuals); *Yusuf*, 35 F.3d at 716 (affirming dismissal of a Title IX selective enforcement claim where the plaintiff failed to allege that any woman was treated differently and that the allegedly disparate treatment of another accused student was based on similar disciplinary charges). The backdrop against which selective enforcement claims are evaluated is the guiding principle under Title IX that, "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 648 (1999).

Plaintiff has not plausibly alleged that any similarly situated female students were treated differently than he was. Instead, he offers only conclusory allegations in support of his selective enforcement claim. First, he alleges that Jane Roe was not punished when he complained that she allegedly threatened and intimidated him. (Amended Complaint, ¶ 280.) However, Plaintiff

9

does not allege that Ms. Roe engaged in, or was accused of engaging in, sexual misconduct like

he was.  Therefore, she was not similarly situated to Plaintiff for purposes of a selective

enforcement claim.  *See Prasad v. Cornell Univ.*, No. 5:15-cv-322, 2016 WL 3212079, at *18

(N.D.N.Y. Feb. 24, 2016) ("Having failed to allege factual support for the proposition that

female students who were accused of sexual misconduct at Cornell were treated more favorably

than male students under similar circumstance, Plaintiff's Title IX selective enforcement claim is

dismissed."); *Yusuf*, 35 F.3d at 716 (affirming dismissal of selective enforcement claim where

plaintiff alleged that fellow student was not similarly disciplined for "brutally attacking him" as

plaintiff was for sexual harassment; court held that this did "not demonstrate an inconsistency

that warrants further inquiry" and "[a]t best, Yusuf has alleged facts that suggest that Weisman's

panel displayed an unusual tolerance of physical violence and may have been influenced toward

leniency...").  Second, Plaintiff alleges, "on information and belief," that sexual misconduct

claims against male students are investigated at a greater rate than those against female students.

(Amended Complaint, ¶ 281.)  He also alleges that female students are less severely disciplined

compared with males.  *Id.*  Plaintiff states that:

> [t]hese allegations are alleged on information and belief because Plaintiff was
> unable to locate any data relating to the gender of students accused of sexual
> misconduct who were formally investigated, found responsible and received
> sanctions.

*Id.*  In other words, Plaintiff has no actual knowledge of any selective enforcement, but merely

presumes it.  There are no allegations as the specifics of comparable offenses by a female that

would suggest discrimination based on gender.

Plaintiff includes a footnote (number 53), citing cases from outside the Second Circuit

purportedly allowing plaintiffs to pursue claims based upon such allegations, because they might

discover supporting evidence during discovery.  Statistical data about investigations and

discipline by gender does not support any Title IX claim, as a disparate impact theory of liability is not recognized under Title IX. *See, e.g., Yu v. Vassar Coll.*, 97 F.Supp.3d 448, 461 (S.D.N.Y. 2015) ("it does not appear that a private right of action for disparate impact is cognizable under Title IX."). Regardless, Second Circuit law is clear that Plaintiff's claim cannot proceed where he has no information to support his allegations at the pleading stage. In *Albert v. Carovano*, 851 F.2d 561 (2d Cir. 1988), the court cautioned against allowing selective enforcement claims to proceed to discovery based upon conclusory allegations, stating:

> Otherwise, every conclusory selective-enforcement claim would lead to discovery concerning the entire disciplinary history of a college and then to a confusing, unmanageable and ultimately incoherent retrial of every disciplinary decision, including decisions not to investigate.

*Id.* at 574.

Accordingly, Plaintiff has not plausibly alleged a selective enforcement claim, and that portion of Count I should be dismissed.

### D. Plaintiff's State Law Claims Should Be Dismissed Because He Does Not Plausibly Allege Any Claim.

Plaintiff has failed to plausibly allege state law claims of breach of contract, breach of the implied covenant of good faith and fair dealing, or NIED, in Counts II, III and V, respectively.

### 1. The University's Actions Are Entitled To Deference.

All of Plaintiff's common law claims are based upon his claim that the University failed to properly conduct the investigation and disciplinary proceedings. This amounts to nothing more than an educational malpractice challenge to the University's educational program and is precluded by Connecticut law. Therefore, Counts II, III and IV should be dismissed.

In *Gupta v. New Britain General Hospital*, 239 Conn. 574 (1996), the Connecticut

Supreme Court expressly rejected tort and contract claims challenging an academic institution's

overall educational policies, curriculum, and program.  "Because [ ] tort principles are difficult,

if not impossible, to apply in the academic environment, courts have almost universally held that

claims of 'educational malpractice' are not cognizable."  (Citation and quotation marks omitted.)

*Id.* at 592.  Based on the same "jurisprudential considerations that shed doubt on the viability of

the tort of educational malpractice…, contract claims challenging the overall quality of

educational programs 'have generally been rejected' [as well]."  *Id.* at 592-593.  Recognizing

both the deference afforded to academic decision-makers and the difficulty of applying tort and

contract principles to the academic context, the *Gupta* court recognized only two situations

where courts may entertain a cause of action for institutional breach of a contract for educational

services.  "The first would be exemplified by a showing that the educational program failed in

some fundamental respect, as by not offering any of the courses necessary to obtain certification

in a particular field.  The second would arise if the educational institution failed to fulfill a

specific contractual promise distinct from any overall obligation to offer a reasonable program."

*Id.* (Internal citations omitted.)

In *Doe v. Yale University*, 252 Conn. 641, 663 (2000), the court clarified that *Gupta* does

not bar all negligence claims against an educational institution.  The *Doe* court distinguished its

case on the fact that *Doe* involved an allegation of physical harm to the plaintiff.  The court held

that "[w]hen . . . the result is physical harm . . . we are willing to recognize the claim because it

falls within the traditionally recognized duty not to cause physical harm by negligent conduct."

(Emphasis in original.) *Id.*  However, the *Doe* court reiterated *Gupta*'s instruction that, "[w]hen

the claimed result is an inadequate education, there is no viable claim . . . ." *Id.*  Thus, pursuant

to *Gupta*, the nature of the harm alleged may be determinative of whether "educational malpractice" is being alleged and whether *Gupta* will apply.

"[D]ecisions regarding admission, suspension and expulsion involve the exercise of professional judgment. As such, a claim for negligence arising from these events cannot be maintained." *Brodsky v. The Mead School*, No. DNX05CV970156788S, 1999 WL 391580, *14 (Conn.Super. Jun. 4, 1999) (striking claim pursuant to *Gupta*).  For example, in *Jacobs v. The Ethel Walker School*, No. CV020515279S, 2003 WL 22390051 (Conn.Super. Sep. 30, 2003), the court held that claims by a former private school student of unfair disciplinary proceedings and expulsion were, in fact, claims for educational malpractice.  *Id.* at *6.  Plaintiff does not have to employ the words "educational malpractice" for *Gupta* to apply.  *See, e.g., Jacobs*, 2003 WL 22390051, at *5-6 ("plaintiff does not have to use the words 'educational malpractice' in order for a cause of action to sound in the tort of educational malpractice."); *Vogel v. Maimonides Academy of Western Conn., Inc.*, 58 Conn. App. 624, 631 (2000) ("recklessness" claim was deemed to be one for educational malpractice).  It is of no import that Plaintiff attempts to characterize his claims as something other than educational malpractice.

Courts have applied *Gupta*'s deferential standard to an academic institution's disciplinary decisions related to non-academic rule infractions.  *See, e.g., Bass v. Miss Porter's School*, 738 F.Supp.2d 307, 327 (D. Conn. 2010) (deferring to school's decision to dismiss student for consuming alcohol in violation of school rule); *Mara v. MacNamara*, No. 3:14–CV–01095 (RNC), 2015 WL 4392956, *13  (D.Conn. Jul. 15, 2015) (deferring to university's decision regarding discipline of student for alleged assault); *see also Davis*, 526 U.S. at 648 ("courts should refrain from second-guessing the disciplinary decisions made by school administrators."); *Coveney v. President and Trustees of the College of the Holy Cross*, 388 Mass. 16, 21-22 (1983)

(arbitrary and capricious standard applied to claims of wrongful discipline).

Judge Arterton's decision in *Bass* is particularly instructive in this case. In *Bass*, a former student brought claims against a private secondary school, asserting, among other things, that it wrongly expelled her for violating school rules. *Id.* at 326-27. In granting summary judgment on the plaintiff's NIED claim, Judge Arterton rejected Plaintiff's arguments that her claims were not "premised on a duty to educate." *Id.* at 327. The *Bass* court observed that: "*Gupta* does not foreclose only claimed breaches of duties to educate. Instead, *Gupta* holds, more broadly, that a school's "academic decision deserves deference from the courts." *Id.* at 327, quoting *Craine v. Trinity College*, 259 Conn. 625, 663–64 (2002). The court stated:

> Under *Gupta*, "[t]he plaintiff bears a heavy burden in proving that [her] dismissal resulted from arbitrary, capricious, or bad faith conduct on the part of the [school]. To prevail, [s]he must show that the [school's] decision had no 'discernable rational basis.' " *Gupta*, 239 Conn. at 596…. Because the Handbook provides that dismissal is warranted upon violation of any Major Rule, and because Plaintiff violated a Major Rule when she consumed alcohol, Porter's determination to dismiss Plaintiff does not lack a "discernable rational basis."

*Id.*

The basis of all Plaintiff's common law claims is his allegation that he was unfairly disciplined. However, the University is permitted considerable discretion to make determinations regarding student discipline. As in *Bass*, because the Sexual Misconduct Policy provides that dismissal is warranted for violation of the University's non-consensual sexual intercourse provision, and because the Second Hearing Board found Plaintiff responsible for said violation, the University's determination to dismiss Plaintiff does not lack a "discernable rational basis." The evidence presented included Ms. Roe's testimony, which the panel credited. Plaintiff has not plausibly alleged any arbitrary or capricious conduct. Plaintiff disagrees with the Second Hearing Board's decision, but that disagreement does not equate with a plausible

allegation of arbitrary and capricious conduct.  Therefore, as in *Bass*, *Gupta* precludes Plaintiff's claims.

Moreover, Plaintiff has failed to assert a claim that falls into either of the *Gupta* exceptions.  There is no allegation that the University's educational program failed in some fundamental respect, such as by failing to offer proper courses.  *See Gupta*, 239 Conn. at 592. Therefore, the first exception does not even arguably apply here.  *See Faust v. Connecticut Junior Republic Ass'n.*, No. CV 990336698S, 2000 WL 254570, at *2 (Conn. Super. Feb. 23, 2000) (striking negligence claim and holding first *Gupta* exception not met).

Under the second "narrow" *Gupta* exception, a plaintiff must show that the "educational institution failed to provide specifically promised educational services." *Hope Academy v. Friel*, No. CV030081183S, 2004 WL 1888909, at *2 (Conn.Super. Jul. 22, 2004).  Characterizing the second *Gupta* exception as an "exacting standard," the Connecticut Appellate Court has made clear that, "to limit judicial intervention into educational decision making, the student must… allege nonperformance of a special promise, a promise outside the purview of normal educational expectations." *Faigel v. Fairfield University*, 75 Conn. App. 37, 38 (2003). Affirming the trial court's entry of summary judgment, the *Faigel* Court held that indefinite promissory statements alleged by the plaintiff "did not satisfy the criteria for an action for breach of contract in an educational context that were set out in *Gupta*." *Id.* at 41-42.  Under this exception, "[g]eneral or vague promises do not suffice." *Hope Academy*, 2004 WL 1888909 at *2.  For the reasons set forth in Section III.D.2.a. below, Plaintiff has failed to plausibly state a claim for breach of contract, much less meet the higher standard of alleging "special promises" falling under the second *Gupta* exception.  (*See* Amended Complaint, ¶¶ 289-297.)

Accordingly, based on Plaintiff's failure to plead arbitrary and capricious treatment, or an exception to *Gupta*, Plaintiff's state law claims should be dismissed.

2.     Plaintiff's Breach Of Contract Claim Is Not Plausible.

Plaintiff's breach of contract claim should be dismissed he fails to plausibly allege that any specific promises were breached. Count II fails for other reasons, as well.

a.     *Plaintiff Has Not Plausibly Alleged Any Breach Of Contract.*

Plaintiff has not plausibly alleged identified any specific contractual promises that were breached.

"The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." (Internal quotation marks omitted.) *Hawley Avenue Associates, LLC v. Robert D. Russo, M.D. & Associates Radiology, P.C.*, 130 Conn.App. 823, 832 (2011).

> In order for an enforceable contract to exist, the court must find that the parties' minds had truly met. If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they themselves did not make. [A]n agreement must be definite and certain as to its terms and requirements ... [N]umerous Connecticut cases require definite agreement on the essential terms of an enforceable agreement ... [Furthermore,] [w]hether a term is essential turns on the particular circumstances of each case.

(Citations omitted; internal quotation marks omitted.) *Id.* at 829. "[C]ontractual promise cannot be created by plucking phrases out of context, there must be a meeting of the minds between the parties." *Reynolds v. Chrysler First Commercial Corp.*, 40 Conn.App. 725, 730, cert. denied, 237 Conn. 913 (1996).

Plaintiff cites a variety of alleged promises by the University. (*See* Amended Complaint, ¶¶ 289-297.) However, he fails to plausibly allege any breach of contract based on these allegations. First, Plaintiff claims that the University breached its non-discrimination provision

by discriminating against him on the basis of gender.  (Amended Complaint, ¶¶ 289, 297(a).

However, courts have consistently found similar non-discrimination statements not to be

promissory.  *See, e.g., Byra-Grzegorczyk v. Bristol-Myers Squibb Co.*, 572 F.Supp.2d 233, 254

(D.Conn. 2008) (an anti-discrimination policy "does not indicate that [the company] is

undertaking any contractual obligations towards [its employees]) (citations omitted); *see also*

*Gally v. Columbia Univ.*, 22 F.Supp.2d 199, 208 (S.D.N.Y. 1998) (anti-discrimination policy

does not give rise to contractual liability); *Goodman v. President & Trustees of Bowdoin Coll.*,

135 F.Supp.2d 40, 56 (D.Me. 2001) (same); *Ruegsegger v. Bd. of Regents of Western New*

*Mexico Univ.*, 154 P.3d 681, 688 (N.M. App. 2006) (citing *Goodman* and holding that handbook

provisions setting forth university response to sexual assault complaint were not contractual).

     Plaintiff next claims that DPS failed to notify the Title IX Coordinator/Investigator of

Ms. Roe's report "at the time" it was received.  (Amended Complaint, ¶ 290.)  As the Handbook

makes clear, the provision cited by Plaintiff is not designed to provide the accused with any

procedural rights, but instead precedes language about the Title IX Coordinator/Investigator

following up with the complainant and providing to the complainant information, resources and

assistance.  (Handbook, p. 67.)  Thus, this language is not promissory, and this phrase was

clearly "plucked out of context" by Plaintiff.  *Reynolds*, 40 Conn.App. at 730.  Regardless, per

Plaintiff's allegations, the matter was indeed referred to Title IX Compliance Investigator Pat

Jacquot and was also referred to Attorney Brown, the Title IX Coordinator.  (Amended

Complaint ¶¶ 161, 162.)

     Plaintiff next claims that the University breached the Original Policy by failing to

conduct a "prompt, thorough and impartial investigation."  (Amended Complaint ¶ 290.)  These

alleged "promises" are general and vague in nature and therefore not actionable.  *See Gally*, 22

F.Supp.2d at 208 (code of conduct providing for fair and equal treatment did not create contractual obligation).  Similarly, Plaintiff's claim that the interim measures implemented were not "reasonable" fails to identify any actionable promise.  *See id; Kloth-Zanard v. Amridge Univ.*, No. 3:09cv606, 2012 WL 2397161, at *4 (D.Conn. Jun. 25, 2012) (a "discussion with Plaintiff in which he promised that Amridge would "assist" students "in making sure you get that part of your training done," … does not amount to a "specific promise" as to the extent or nature of assistance that would be provided. Similarly, [a] general statement that [defendant] would help students "in any way" [it] could…to procure a clinical site placement is not a "specific contractual promise…."); *Faigel*, 75 Conn. App. at 42 ("We must decide…whether an alleged promise that "the plaintiff would be allowed 'many credits' from her prior engineering studies" qualifies as a "specific contractual promise." We conclude that it does not. How many is many?"); *Bass*, 738 F.Supp.2d at 324 (finding alleged promise that administrators would care for "[plaintiff's] physical and emotional health while having custody and control over her" to be too imprecise).  The same applies to Plaintiff's claim in paragraph 293 that the University breached a promise to conduct a "full and fair" examination of the evidence at the First Hearing.  *See Gally*, 22 F.Supp.2d at 208 (code of conduct providing for fair and equal treatment did not create contractual obligation).  Plaintiff's claim in paragraph 294 that the First Hearing panel lacked "appropriate" training suffers from this same fatal infirmity.  Additionally, any claims about the First Hearing fail because the Second Hearing negated any earlier alleged irregularities and did not produce any "erroneous outcome." *See, e.g., Doe v. Cummins*, 662 Fed.Appx. 437, 447 (6th Cir. Dec. 6, 2016 ("although both Doe I and Doe II allege that numerous procedural deficiencies existed in their first ARC hearings, those defects were cured by UC's decision to grant their appeals, vacate the finding of responsibility, and provide each a second hearing"); *see also*

*Young v. Hoffman*, 970 F.2d 1154, 1156 (2d Cir. 1992) ("The administrative reversal constituted part of the due process protection he received, and it cured any procedural defect that may have occurred.").

Plaintiff then alleges that the New Policy (which was applied for the first time with respect to the Second Hearing) was breached in several other ways, all of which similarly fail to allege actionable promises. (Amended Complaint, ¶ 297.) The "violations" he claims do not contravene any affirmative statement or supposed promise in the New Policy, but rather are general criticisms of the process. He claims that the notice of investigation he received was not "adequate." *Id.* at ¶ 297b. Like the claims above, an alleged promise of an "adequate" notice is not sufficiently precise. Plaintiff had notice since December 2017 of an investigation and the charges against him and the interim measures applied, so he cannot plausibly claim he was denied this information. Regardless, the New Policy was not applied by the University until after the allegedly "inadequate" notice was issued and therefore cannot be relied on for any such "promise."

Plaintiff then claims that the University failed to advise him of his right to have an advisor present throughout the process, as required by the New Policy. *Id.* at 297(c). However, the New Policy does not state that the University will notify students about rights to an advisor; and, more importantly, the New Policy *itself* provides information about rights to advisors. (*See* New Policy at 17.) Also, again, the New Policy was not applied to the case until after the First Hearing, so anything occurring before then, such as in the investigation, cannot have violated the New Policy. This claim plainly fails. Plaintiff further claims that he was denied the right to inform Attorney Brown about possible conflicts with Officer Jacquot as investigator. (Amended Complaint, ¶ 297(d).) The New Policy did not apply to the investigation, and it nevertheless

expressly states that students should "inform the Title IX Compliance Coordinator (in writing) of any conflicts of interest with regard to the selected Investigator(s)." (New Policy at 18.)  This claim is meritless.  Plaintiff's next claim is that the investigation report failed to include an "analysis." (Amended Complaint, ¶ 297(e).)  Nothing in the New Policy requires an "analysis," and the section about the content of the report is couched in non-mandatory terms regarding what it "should include." (New Policy at 19.)  Therefore, there was no promise.  Also, the detailed report does contain analysis (*see* DPS Report), and that report pre-dated that application of the 2018 Policy.  Plaintiff's claim in paragraph 297(f) that he was not provided the opportunity to comment on the report similarly fails because the report pre-dated the New Policy, and he does not allege that anything prevented him from commenting on the report after he received it.  Plaintiff claims that it was a violation of the New Policy for Ms. Donoghue to "refer the charges for a hearing." (Amended Complaint, ¶ 297(g).)  However, the New Policy does not preclude her from doing so, and did not apply when the matter was referred for a hearing.  Plaintiff also claims that it was a violation of the New Policy for Ms. Donoghue to apply the Original Policy to the first hearing. (Amended Complaint, ¶ 297(h).)  This claim is contrary to the New Policy, which states that "Complaints made or claims reported prior to January 1, 2018 will generally be reviewed under the prior Sexual Misconduct Policy" unless Attorney Brown determined otherwise in her discretion. (New Policy at 3.)  Therefore, the default was that the Original Policy applied, and there was no breach or any supposed "promise" to the contrary.

In Paragraph 297(i), Plaintiff alleges that he was denied the opportunity to request reconsideration of interim measures by an independent ombudsman.  However, the New Policy did not apply when the interim measures were imposed, and the language of the policy is permissive, not mandatory ("initial steps…may include…."). (New Policy at 14-15.)  Also,

Plaintiff does not allege that the University did anything to prevent him from requesting such reconsideration. Plaintiff claims that the Second Hearing failed to "follow the Review and Determination" process and failed to "apply the preponderance of the evidence standard." (Amended Complaint, ¶ 297(j) and (k).) These are simply Plaintiff's disagreement with the result and he has not alleged the breach or making of any specific promise. Plaintiff makes no allegations aside from his claim of innocence that plausibly allege a different standard was used. He simply claims that the outcome was incorrect and thus must be a result of applying an improper standard. Plaintiff does not even allege what standard he believes was applied *in lieu* of preponderance. Plaintiff further alleges that he was denied the opportunity to meet with the Dean of Students to discuss the sanctions within three days of notification. (Amended Complaint, ¶ 297(l).) However, the New Policy does not guarantee any such rights; it states that students "may request the opportunity" to meet. (New Policy, at 22.) This is not contractual, and Plaintiff does not allege he was denied the opportunity to request a meeting. Finally, Plaintiff makes a claim that the Original Policy's standard for an appeal, rather than the one under the New Policy, was applied. (Amended Complaint, ¶ 297(m).) Both policies permit appeals based only upon new information or significant procedural errors. The small textual difference between the two does not present a different standard. Regardless, the language relied on by Plaintiff is not an assurance about what standard is to be used, but simply limits the situations in which appeals may be filed. (*See* New Policy at 24, stating "A Responding Party appealing under this section may only appeal on the following  grounds….") Furthermore, the determination of an appeal is left to the discretion of the appellate officer, and cannot form the basis of a specific contractual promise.

Accordingly, none of Plaintiff's breach of contract allegations plausibly state a claim and Count II should be dismissed.

        *b.*     *Plaintiff's Contract Claims Are Truly Disguised Negligence Claims.*

Plaintiff's breach of contract claim should be dismissed for the additional reason that it is merely a re-labeled claim of negligence.

"Tort claims cloaked in contractual language are, as a matter of law, not breach of contract claims." *Weiner v. Clinton*, 106 Conn.App. 379, 383, cert. denied, 282 Conn. 928 (2008) "When a defendant's liability to the plaintiff is premised…on principles of tort law ... the plaintiff may not convert that liability into one sounding in contract merely by talismanically invoking contract language in his complaint .... [C]onsequently a reviewing court may 'pierce the pleading veil' to ensure that such is not the case." (Citation omitted; internal quotation marks omitted.) *Pelletier v. Galske*, 105 Conn.App. 77, 81 (2007), cert. denied, 285 Conn. 921 (2008). To determine whether a contract claim is a disguised tort claim, courts will look to the "gravamen of the action" as alleged in the complaint. *Id.* Even where "the gravamen of the…contract theory is … a tort arising out of…contract" rights, such a claim may not proceed. *Gazo v. City of Stamford*, 255 Conn. 245, 263 (2001).

In *Gazo*, a pedestrian alleged that he fell on an icy and snowy sidewalk in Stamford. He alleged that he was a third-party beneficiary of a contract between the abutting property owner, Chase Bank, and the contractor it hired to maintain the property, Pierni Construction. He asserted a claim against Pierni, alleging that Pierni's failure to maintain the sidewalk was a breach of the contract. The court examined the nature of the "contract" claim, including the damages sought, and concluded that this was in reality merely a disguised negligence claim, and struck it on that basis. The Connecticut Supreme Court affirmed, concluding:

> The plaintiff is seeking compensation for injuries suffered from a fall on ice and snow, purportedly because of Pierni's negligence. The recovery the plaintiff seeks for his personal injuries is generally understood as tort damages. Although the duty between Pierni and the plaintiff may have arisen because of the contract between Chase Bank and Pierni for snow and ice removal, the plaintiff is not seeking damages for that breach, but rather for Pierni's negligence in the performance of the contract.
>
> In light of these circumstances, it simply would not make sense to permit the plaintiff to recover under a contract theory.

*Id.* at 265. The court focused on the damages claimed by the plaintiff, noting that "[t]he usual recovery for breach of a contract is the contract price or the lost profits therefrom." *Id.* The court observed that:

> The plaintiff does not seek the contract price ... Instead, the plaintiff seeks recovery for his physical and mental pain and suffering, lost wages and medical bills resulting from [the defendant's] negligence. Although contract damages ordinarily consist of consequential losses ... they ordinarily do not encompass such losses as pain and suffering. It is clear, therefore, that although the plaintiff has cast this claim in contractual language, in essence he seeks a tort recovery.

(Citations omitted .) *Id.* at 265-66.

As in *Gazo*, Plaintiff's "breach of contract" claim is simply a mislabeled negligence claim. Plaintiff's claim is, at its core, that the University failed to conduct an adequate investigation and disciplinary proceedings, not that some "contract" was breached. In his original Complaint, Plaintiff had sought the following damages for his breach of contract claim: "emotional distress, loss of educational and career opportunities, financial injuries, and other direct and consequential damages." (Complaint at ¶ 152.) The University's prior Motion to Dismiss included the above *Gazo* argument, and Plaintiff has repled his demand for damages in a vague manner in an attempt to circumvent the argument, but that attempt fails. In Count II, Plaintiff now seeks damages for "substantial economic losses" (Amended Complaint, ¶ 300) and in his Prayer for Relief regarding Count II, he seeks "damages, including punitive damages, in an

amount to be determined at trial plus pre judgment interest" (Prayer for Relief at (ii)). However, he still incorporates into Count II by reference his requests for many types of damages, including emotional distress. *Id.* at ¶¶ 283, 286. Like in *Gazo*, it is clear Plaintiff is not seeking "the contract price or …lost profits" but is instead seeking damages for injuries to his education and career. *See Gazo*, 255 Conn. at 264 n8; *Smith v. Bridgeport Futures Initiative, Inc.*, No. 326697, 1996 WL 493229, at *3 (Conn. Super. Aug. 13, 1996) ("the plaintiff may not recover damages for "unemployment, loss of esteem, damage to her professional career and reputation [and] mental and physical suffering" in a breach of contract action). Plaintiff's allegations amount to an attack of the University's standard of care and his vague request for "damages" based on how the disciplinary process allegedly affected him, demonstrates that Plaintiff's claim is truly one for negligence. Count II should therefore be dismissed for failing to state a breach of contract claim, and any negligence claim based on its allegations is precluded by *Gupta*.

      *c.*    *The Handbook Disclaimer Precludes Liability.*

Count II fails also because the Handbook contains a disclaimer that expressly states it is not a contract.

The Connecticut Supreme Court has recognized that handbook drafters may avoid contractual commitments by "(1) eschewing language that could reasonably be construed as a basis for a contractual promise; and/or (2) including appropriate disclaimers of the intention to contract ..." (Internal quotation marks omitted.) *Gaudio v. Griffin Health Services Corp.*, 249 Conn. 523, 535 (1999) (discussing contracts arising out of employee handbooks); *see Kent Literary Club of Wesleyan University v. Whaley*, No. CV040104195S, 2004 WL 2361686, at *4 (Conn. Super. Sep. 16, 2004) (applying concept to student handbook). Here, the Handbook, which contains the Original Policy and the New Policy, includes, at its outset, an explicit

disclaimer that it is not a contract, and is subject to change at any time.  (Exhibit A, p. 1.)

Indeed, the precise disclaimer language at issue has been found to preclude contractual

commitments.  *See Eiland v. Wolf*, 764 S.W.2d 827, 838 (Tex. App. 1989) (course catalog not

contractual given disclaimer stating "the provisions of this catalogue are subject to change

without notice and do not constitute an irrevocable contract between any student…and The

University of Texas Medical School at Galveston…."); *see also Hope Acad. Of Milford, Inc. v.*

*Fortier,* No. CV03081072S, 2004 WL 944480, at *4 (Conn.Super. Apr. 13, 2004) (quoting ALR

stating "a disclaimer might take the form of a notice that the catalog or bulletin [does] not

constitute an irrevocable contract between any student and [the school] or that the publication

was in no way intended to state contractual terms.").

Therefore, Plaintiff's breach of contract claims, which are all based upon the Handbook,

should be dismissed.  *See Doe v. French*, 458 Fed.Appx. 21, 23 (2d Cir. 2012) (affirming

dismissal of contract claim based on violation of employee handbook because it contained a

disclaimer).

### 3.    Plaintiff's Implied Covenant Claim Is Not Plausible.

Plaintiff's implied covenant claim should be dismissed because it fails to plausibly allege

that the University acted in bad faith, and, regardless, adequate statutory remedies exist that

preclude this claim.

"The covenant of good faith and fair dealing presupposes that the terms and purpose of

the contract are agreed upon by the parties and that what is in dispute is a party's discretionary

application or interpretation of a contract term." *De La Concha of Hartford, Inc. v. Aetna Life*

*Ins.* Co., 269 Conn. 424, 433 (2005) (internal quotation marks omitted). "To constitute a breach

of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly

impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." *Id.* (internal quotation marks omitted). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Bad faith means more than mere negligence; it involves a dishonest purpose." *Habetz v. Condon*, 224 Conn. 231, 237–38 (1992).  Where bad faith has not been plausibly alleged, dismissal of an implied covenant claim is appropriate. *See, e.g., Kim v. State Farm Fire and Casualty Company*, No. 3:15-cv-879 (VLB), 2015 WL 6675532, at *3 - *4 (D.Conn. Oct. 30, 2015) (dismissing implied covenant claim where bad faith not adequately alleged.); *Dubinsky v. Meyers, Breiner & Kent, LLP*, No. FBTCV156052685S, 2016 WL 1553008, at *6 - *7 (Conn. Super. Mar. 29, 2016) (granting motion to strike implied covenant claim where "a favorable review of the allegations in Count Three fails to reveal any allegations of bad faith either specific or implied.").

The Connecticut Appellate Court has "assume[d] that the implied covenant provides protection less than or equal to that afforded him under the arbitrary, capricious or bad faith standard [of] *Gupta*….." *Daley v. Wesleyan University*, 63 Conn.App. 119, 134 n 18 (2001).  As such, for the reasons set forth in Section III.D.1. above, Plaintiff has failed to allege conduct amounting to a violation of the implied covenant.  Plaintiff does not make any factual allegations that plausibly assert that the University acted in bad faith.  Plaintiff alleges that the investigation and disciplinary process were flawed but such allegations cannot sustain an implied covenant claim, particularly given that there was a thorough investigation, Plaintiff received two separate hearings, the second one at his request, and was represented by an advisor at both.  Accordingly,

Plaintiff's implied covenant claim in Count III should be dismissed. *See McKinstry v. Sheriden Woods Health Care Center, Inc.*, 994 F.Supp.2d 259, 267 (D. Conn. 2014) (dismissing implied covenant claim).

Furthermore, the implied covenant claim is precluded by virtue of available adequate statutory remedies. When a statutory remedy is available to the plaintiff, "an action brought on the basis of an alleged breach of the implied covenant of good faith and fair dealing is precluded." *Campbell v. Plymouth*, 74 Conn.App. 67, 75 (2002). It matters not if a plaintiff can actually state such a claim under the relevant statute, but only that such a statute addressing the type of claim at issue exists. *See Pickering v. Aspen Dental Management, Inc.*, 100 Conn.App. 793, 799 (2007) (wrongful termination claim barred by the whistleblower statute, § 31–51m, despite "the fact that the statute of limitations period on [the plaintiff's] claim ha[d] run...."); *Thibodeau v. Design Group One Architects, LLC*, 260 Conn. 691, 718 (2002) (the existence of a statutory remedy, although unavailable to the plaintiff, nonetheless precluded a wrongful termination claim). Plaintiff has incorporated all of his prior allegations into Count III by reference, and bases his claim on the allegedly flawed process based on his gender and disability. However, Title IX and Section 504 provide statutory remedies for such claims, and his common law implied covenant claim on those bases is precluded and should be dismissed.

### 4.   Plaintiff's NIED Claim Is Not Plausible.

Plaintiff's NIED claim fails because he has not plausibly alleged conduct on the part of Attorney Brown or Ms. Donoghue that was arbitrary or capricious, as required by *Gupta*.

As discussed in Section III.D.1 above, *Gupta* requires that an NIED claim challenging a university's disciplinary process must include allegations of arbitrary and capricious conduct. *See Bass*, 738 F.Supp.2d at 327. Allegations of negligence will not suffice. Plaintiff has not

pled any arbitrary or capricious conduct by Attorney Brown or Ms. Donoghue in support of his

NIED claim, but rather makes claims that they failed to address behavior by Ms. Roe and that

Ms. Donoghue "reversed" Attorney Brown and denied Plaintiff's request to alter his punishment

so he could attend classes on campus.  Neither Attorney Brown nor Ms. Donoghue are alleged to

have caused any of Ms. Roe's alleged conduct, but are rather criticized for their failure to address

it, in his view, appropriately.  This is nothing more than, at best, a negligence claim, which is

insufficient under *Gupta*.  Furthermore, as set forth below, Plaintiff was not entitled to have his

discipline reduced because of any alleged learning disability and it was entirely appropriate to

deny him this requested accommodation.  Thus, these allegations do not plausibly support a

claim of arbitrary and capricious conduct.  In support of his NIED claim, Plaintiff also alleges he

perceived Ms. Donoghue's "demeanor" toward him as "hostile."  Such an allegation in no way

supports a claim of arbitrary conduct.  *See Perez v. Tedford*, No. SA–13–CV–429–XR, 2013 WL

5740256, at *3 (W.D. Tex. Oct. 22, 2013) ("The three individual defendants…argue that

Plaintiff fails to state a claim under the Fourth Amendment inasmuch as she does not allege that

she was wrongfully arrested, detained, or subject to any search. Although given an opportunity to

amend her complaint, Plaintiff only alleges that given the officers' demeanor she did not "feel"

free to leave the Principal's office. Plaintiff fails to meet her burden under *Twombly/Iqbal* and

fails to state a cause of action under the Fourth Amendment.").  For all of these reasons,

Plaintiff's NIED claims, and the Individual Defendants, should be dismissed from the case.

### E.    Plaintiff's Section 504 Claim Should Be Dismissed Because He Does Not Plausibly Allege Disability Discrimination.

In Count IV, Plaintiff asserts a claim under Section 504 of the Rehabilitation Act.  That

claim fails as a matter of law.

The Supreme Court has held that § 504 of the Rehabilitation Act requires that "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers." *Alexander v. Choate*, 469 U.S. 287, 301 (1985). "[T]o assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." *Id.* Section 504 does not, however, require accommodations "beyond those necessary to eliminate discrimination against otherwise qualified individuals." *Southeast Cmty. Coll. v. Davis*, 442 U.S. 397, 410 (1979). The Rehabilitation Act does not require a school to grant an accommodation if it would impose undue financial and administrative burdens or require a fundamental alteration in the nature of the program. *See School Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 287 n. 17 (1987).

Plaintiff claims he was denied an accommodation of being permitted on campus to complete coursework during his suspension. However, a university is not required to modify its disciplinary practices as an accommodation to a disabled student. *See Bercovitch v. Baldwin School Inc.*, 133 F.3d 141, 152 (1st Cir. 1998) (finding that school was not required to exempt student with ADHD from the normal operation of its disciplinary code); *Stearns v. Bd. of Educ. for Warren Twp. High Sch. Dist. #121*, No. 99 C 5818, 1999 WL 1044832, at *3 (N.D. Ill. Nov. 16, 1999) (rejecting failure to accommodate claim because student's request that school change its disciplinary policy would fundamentally alter the disciplinary policy). This is precisely what Plaintiff seeks. He received discipline that included being barred from campus but he seeks to be excused from that discipline by invoking Section 504. This is not a "reasonable accommodation." *Id.* Furthermore, Plaintiff's allegation that his request for accommodation was initially granted, but then denied, does not support that it was "reasonable." *See, e.g., Uhl v. Home Depot U.S.A., Inc.*, No. 08–CV–3064(JS)(ETB), 2010 WL 3282611, *5 (E.D.N.Y. Aug.

13, 2010) ("At most, Mr. Uhl has shown that, when he faced similar medical restrictions in 2003, Home Depot crafted a 'light duty' position that enabled him to work while excusing him from some undisputed essential functions of a Sales Associate position. But, contrary to Mr. Uhl's belief, this does not mean that Home Depot previously gave him a 'reasonable accommodation,' that it must afford him again. Instead, it supports that Home Depot previously exceeded its legal obligations, by affording him a more than reasonable accommodation. Home Depot's prior, voluntary effort to accommodate Mr. Uhl in excess of its legal obligations is admirable. But it does not compel Home Depot to continue to accommodate him beyond what the law requires."); *Meyers v. Conshohocken Catholic*, No. Civ.A.03-4693, 2004 WL 3037945, at *9 (E.D.Pa. Dec. 30, 2004) ("when an employer has exceeded the ADA's requirement of reasonable accommodation, its decision to discontinue the accommodation does not give the plaintiff a cause of action against it.").

Accordingly, Count IV should be dismissed.

## IV.   CONCLUSION

Plaintiff's attempt to bolster his Amended Complaint has not succeeded in alleging valid causes of action. All of his claims, except the "erroneous outcome" claim in Count I, should be dismissed.

THE DEFENDANTS,
FAIRFIELD UNIVERSITY,
KAREN DONOGHUE, AND
CHRISTINE BROWN


By:_____ */s/ James M. Sconzo*_____
James M. Sconzo, Esq. (ct04571)
Jonathan C. Sterling, Esq. (ct24576)
CARLTON FIELDS, P.C.
One State Street
Suite 1800
Hartford, CT  06103
Telephone:  860-392-5000
Facsimile:  860-392-5058
Email:   jsconzo@carltonfields.com
          jsterling@carltonfields.com
Their Attorneys

## **CERTIFICATION**

This is to certify that on this 2nd day of July, 2019, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system:

William Bilcheck, Jr.
LAW OFFICES OF WILLIAM BILCHECK, JR.
12 Brookside Road
P.O. Box 281
Madison, Connecticut 06443
Email: madctatty@aol.com

Andrew T. Miltenberg
Stuart Bernstein
Diana R. Warshow
Adrienne Levy
Kara L. Gorycki
NESNOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Email: AMiltenberg@nmllplaw.com
Email: SBernstein@nmllplaw.com
Email: DWarshow@nmllplaw.com
Email: ALevy@nmllplaw.com

_/s/ James M. Sconzo_
James M. Sconzo