# EXHIBIT B

# Title IX

Fairfield University ("University"), a Jesuit and Catholic university, has a distinctive mission. The University focuses not only on excellence in teaching, learning and scholarship, but also on growth and development of the whole person. Respect for self and respect for others, both within and outside the University community, lie at the heart of our standards of conduct. Among these are standards regarding human sexuality and how one treats another.

Fairfield University is committed to providing a living, learning and working environment free of gender-based discrimination, including sexual harassment. Sexual misconduct is a form of sexual harassment and it will not be tolerated within the University community.

Title IX of the Education Amendments of 1972 (Title IX) prohibits discrimination based on sex in education programs and activities in federally funded schools at all levels. If any part of a school district or college receives any federal funds for any purpose, all of the operations of the district or college are covered by Title IX.

Title IX protects students, employees, applicants for admission and employment, and other persons from all forms of sex discrimination, including discrimination based on gender identity or failure to conform to stereotypical notions of masculinity or femininity. All faculty, staff, administration and students (as well as other persons) at Fairfield University are protected by Title IX regardless of their sex, sexual orientation, gender identity, part- or full-time status, disability, race, or national origin in all aspects of the University's educational programs and activities. This policy does not in any way supersede the University's commitment to compliance with state or federal law.

# <u>GLOSSARY</u>

*Statement of Sexual Misconduct Policy* . . . . . . . . . . . . 3

I.   Definitions of Prohibited Conduct . . . . . . . . . . . . . 4

II.  Role of the Title IX Coordinator . . . . . . . . . . . . . . 11

III. Reporting Sexual Misconduct . . . . . . . . . . . . . . . . 12

IV.  Process for Investigating and Resolving
     Complaints . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

V.   Resources . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

VI.  Education and Other Preventative Initiatives . . . 30

VII. Bias Response . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# Fairfield University Sexual Misconduct Policy

This Sexual Misconduct Policy (as amended) is effective as of January 1, 2018. Complaints made or claims reported prior to January 1, 2018 will generally be reviewed under the prior Sexual Misconduct Policy, unless otherwise determined by the Title IX Compliance Coordinator, in his/her sole discretion, with respect to continuing or ongoing violations or other pertinent circumstances.

Fairfield University's commitment to non-discrimination includes an assurance that the University will not tolerate discrimination or harassment on the basis of sex, sexual orientation or gender identity, including, but not limited to sexual violence, dating or domestic violence, or stalking, or retaliation, in its community. The Sexual Misconduct Policy is intended to guide the community on the University process to complaints of sexual misconduct, the resources available to individuals affected by sexual misconduct and the sexual misconduct prevention initiatives of the University. The Sexual Misconduct Policy applies to all University community members, and all members of the University community are responsible for being familiar with and abiding by the Sexual Misconduct Policy at all times.

A. **Compliance Notice:** The University does not discriminate on the basis of sex in its educational programs and activities, and Title IX requires that it not discriminate in such a manner.  Sexual misconduct is a form of gender-based discrimination prohibited by both this policy, Title IX and other federal and state laws.  Inquiries concerning the application of Title IX may be made to the University's Title IX Compliance Coordinator:

   Christine Donahue Brown, J.D.
   Executive Assistant to the EVP & Title IX Compliance Coordinator
   Phone: (203)254-4000, ext. 3329
   E-mail: cbrown@fairfield.edu

B. **Jurisdiction:** The University's disciplinary jurisdiction is limited to conduct which occurs on-campus and certain off-campus conduct.  Off-campus conduct falls within the scope of this policy when the University determines that such conduct is sufficiently serious that it interferes with, or limits, an individual's ability to participate in or benefit from the University's educational programs or activities.  Examples of off-campus conduct which the University may exercise jurisdiction over include, but are not limited to, off-campus parties and school-sponsored programs at off-campus locations and travel associated therewith.

Case 3:19-cv-00212-WWE   Document 26-3   Filed 05/10/19   Page 5 of 32

C. **Definition of "Party":** Within the text of this policy the term "party" shall be used in multiple sections for various applications.  For purposes of this policy, the term "party" shall be defined as a person, especially one with specified characteristics; a person or people forming one side in an agreement or dispute; or a group of people taking part in a particular activity or trip.

D. **Relationship with Academic Freedom and Freedom of Expression:** Fairfield University is committed to protecting the academic freedom of its faculty and the freedom of expression of all members of the University community. That commitment is reflected in the University's policies on academic freedom and freedom of expression. Academic freedom and freedom of expression include the expression of ideas, controversial and otherwise, both within and outside the classroom and in keeping with different responsibilities within the workplace on campus. The policies on discrimination and harassment are to be applied in a manner that is balanced against, consistent with, and protective of, the rights of academic freedom and freedom of expression of all parties, however said policies will defer to the requirements of the law under Title IX.

# I.  Definitions of Prohibited Conduct

The following are the definitions of conduct that is prohibited under the University's Sexual Misconduct Policy:

A. **Consent:** "Affirmative Consent" means an active, clear and voluntary agreement by a person indicating a willingness to do the same thing, at the same time, in the same way to each other.   Affirmative Consent is required for all sexual contact and activity with another person.   Consent for one activity does not mean consent for all activities.  Consent may be withdrawn at any time. Mutually understandable consent is almost always viewed under an objective, reasonable person standard. The only context in which mutually understandable consent would be viewed under a subjective standard is in the instance of a long-standing relationship where a couple have established patterns of communicating consent, but even then there must still be evidence of free and knowing participation to establish consent. Effective consent is informed consent which is freely and actively given. Consent which is obtained through the use of fraud, force (actual or implied), threats, intimidation, or coercion is ineffective consent. Past consent does not imply future consent. Consent may never be given by a minor (in Connecticut, those not yet 16 years of age for sexual acts ). Mentally disabled persons cannot give effective consent to sexual activity.

Physically incapacitated persons cannot give consent.  Incapacitation is a state beyond drunkenness or intoxication. A person is not necessarily incapacitated

4

merely as a result of drinking or using drugs. A person could be incapacitated due to other reasons which may include: sleep, prescribed or over the counter medication, mental or physical disability. Alcohol-related incapacity results from a level of alcohol ingestion that is more severe than impairment, being under the influence, drunkenness or intoxication. The impact of alcohol and other drugs varies from person to person. The inability to perceive capacity to consent does not excuse the behavior of the person who initiates, or furthers, the sexual interaction.

Silence, passivity, or the absence of resistance does not imply consent. Relying solely on non-verbal communication may result in confusion about whether there is effective consent. It is important not to make assumptions. If confusion or ambiguity arises during a sexual interaction, it is essential that each participant stops and verbally clarifies the other's willingness to continue.

Consent for one activity does not mean consent for all activities. Consent can be withdrawn at any time. When consent is withdrawn, sexual activity must cease. Prior consent does not imply current or future consent; even in the context of an ongoing relationship, consent must be sought and freely given for each instance of sexual contact. An essential element of consent is that it be freely and actively given.

Mutually understandable consent is almost always viewed under an objective, reasonable person standard. In evaluating whether consent was given, consideration will be given to the totality of the facts and circumstances including, but not limited to, the extent to which an individual affirmatively uses words or actions indicating a willingness to engage in sexual contact, free from intimidation, fear, or coercion; whether a reasonable person in the position of the individual alleged to have committed the conduct would have understood such person's words and acts as an expression of consent; and whether there are any circumstances, known or reasonably apparent to the individual alleged to have committed the conduct, demonstrating incapacitation or fear.

B. **Coercion:** Coercion is defined for purposes of this section as the application of unreasonable pressure to take part in sexual activity or in any of the prohibited conduct listed in this document. Unreasonable pressure can be exerted through physical or emotional force, intimidation, misuse of authority, or outright threats. When someone makes it clear that he or she does not want to engage in sexual activity or does not want to go beyond a certain point of sexual interaction, continued pressure beyond that point may be considered coercive. Ignoring or dismissing the objections of another person may also be a form of coercion.

C. **Force:** Force shall mean the use of physical violence and/or imposing on someone physically to gain sexual access. Force also includes threats, intimidation, implied threats, and coercion. There is no requirement that an individual resist the sexual

advance or request, but the presence of resistance is a clear demonstration of non-consent.

**D. Intercourse:** Intercourse shall mean vaginal penetration by a penis, object, tongue, or finger; anal penetration by a penis, object, tongue, or finger; and oral copulation (mouth to genital contact or genital to mouth contact), no matter how slight the penetration or contact.

**E. Sexual Contact:** Sexual contact shall mean intentional contact with the breasts, buttocks, groin, or genitals; or touching another with any of these body parts; or making another touch you or themselves with or on any of these body parts; and intentional bodily contact in a sexual manner even if not involving contact with, of, or by breasts, buttocks, groin, genitals, mouth, or other orifice.

**F. Intimidation:** Intimidation shall mean the creation of fear in a victim, and the very nature of a threat is the creation of fear of negative consequences for the purpose of influencing behavior.

**G. Discrimination:** Fairfield University does not discriminate on the basis of race, color, sex, sexual orientation, gender identity, gender expression, marital status, veteran's status, political ideology, religion, national or ethnic origin, age, or disability in the administration of educational policies or programs, admission and employment policies, scholarship and loan programs, and athletic and other school-administered programs. As a Catholic, Jesuit institution, Fairfield University values and celebrates the diverse backgrounds, cultures, experiences, and perspectives of our community. Through the promotion and protection of diversity, the Fairfield University community creates an environment where holistic development, academic excellence, and a commitment to the well-being of others can flourish. The University is committed to maintaining a diverse and multicultural community in which the dignity and worth of each of its members is respected. The University strongly condemns any unlawful or wrongful discrimination against the rights of others.

**H. Harassment:** Fairfield University defines harassment as verbal or physical conduct based on a person's race, color, sex, sexual orientation, gender identity, gender expression, marital status, veteran's status, political ideology, religion, national or ethnic origin, age, or disability that is sufficiently severe, pervasive, persistent, or patently offensive that it has the purpose or effect of denying or limiting a student's ability to participate in or benefit from the educational program, or that creates an intimidating, hostile, or offensive working, educational, or living environment. To constitute harassment, the conduct must include something beyond the mere expression of views, words, symbols, or thoughts that some person may find offensive. The alleged conduct will be viewed from both a subjective (the Reporting Party) and an objective (reasonable person's) viewpoint, and take into consideration

all surrounding circumstances. Included within this definition is bias-related harassment, which is language or behaviors that demonstrate bias against persons or groups because of race, color, ethnicity, religion, faith, national origin, political orientation, or sexual orientation. Some incidents of bias-related harassment may rise to the level of a hate crime. Hate crimes are defined by state and federal law, and typically involve a crime that is motivated by bias, and results in physical harm to person or property.

I.   **Intimate Partner Violence (Dating Violence) and Domestic Violence:**

1.   **Intimate Partner Violence (also known as Dating Violence):** the use of physical violence, sexual violence, coercion, threats, intimidation, isolation, stalking, or other forms of emotional, sexual or economic abuse directed towards a current or former intimate partner.  This includes any behaviors that intimidate, manipulate, humiliate, isolate, frighten, terrorize, coerce, threaten, blame, hurt, injure, or wound someone.  Behavior can be spoken, written, or physical. Intimate partner violence can be a single act or a pattern of behavior in relationships.  Intimate partner relationships are defined as short- or long-term relationships (current or former) between persons intended to provide some emotional/romantic and/or physical intimacy.

2.   **Domestic Violence:** Abusive behavior in an intimate or family relationship where the behavior is used to exert power and control over another party in the relationship.  Domestic violence can include, but is not limited to, physical, sexual, emotional, economic, or psychological actions or threats of actions that influence another person.

J.   **Retaliation:** Engaging in conduct that may reasonably be perceived to:

1.   adversely affect a person's educational, living, or work environment because of their good faith participation in the reporting, investigation, and/or resolution of a report of a violation of the Sexual Misconduct Policy; or

2.   discourage a reasonable person from making a report or participating in an investigation under the Sexual Misconduct Policy, any other University policy, or any other local, state, or federal complaint process, *e.g.*, filing a complaint with an entity like the U.S. Department of Education. Retaliation includes, but is not limited to, acts or words that constitute intimidation, threats, or coercion intended to pressure any individual to participate, not participate, or provide false or misleading information during any proceeding under the Sexual Misconduct Policy.

Retaliation may include abuse or violence, other forms of harassment, and/or making false statements about another person in print or verbally with intent to

Case 3:19-cv-00212-WWE   Document 26-3   Filed 05/10/19   Page 9 of 32

harm their reputation. Retaliation can be committed by any individual or group of individuals, not just a Responding Party or a Reporting Party. Retaliation may constitute a violation of the Sexual Misconduct Policy even when the underlying report made did not result in a finding of responsibility. Retaliation, even in the absence of provable discrimination or harassment in the original complaint or charge, constitutes a serious violation of this policy.

K. **Sex Discrimination:** An intentional or unintentional act that adversely affects employment and/or educational opportunities because of a person's sex, marital or parental status, sexual orientation or gender identity. Discrimination may be classified as either disparate impact (e.g. practices which appear neutral but impact one group more harshly than another and cannot be justified by business necessity, facially neutral practices that fall more harshly on one group than another and cannot be justified by business necessity) or disparate treatment (e.g., treatment of an individual that is less favorable than treatment of others based upon unlawful discriminatory reasons).

L. **Sexual Harassment:** Sexual harassment consists of two basic types:

   1. **Quid Pro Quo Harassment:** Any action in which submission to or rejection of unwelcome conduct of a sexual nature is made either explicitly or implicitly a term or condition of an individual's education, grades, recommendations, extracurricular programs or activities, or employment opportunities.

   2. **Intimidating or Hostile Environment:** Any unwelcome conduct of a sexual nature that is severe, persistent, or pervasive, and creates an intimidating, hostile or offensive working or educational environment, or has the purpose or effect of unreasonably interfering with an individual's employment, academic performance, education, or participation in extracurricular programs or activities.

In either type of sexual harassment noted above, the effect will be evaluated from both a subjective perspective, as well as the objective perspective of a reasonable person in the position of the person who experienced the conduct.

Forms of Sexual Harassment: In some cases, sexual harassment is obvious and may involve an overt action, a threat, or reprisal. In other instances, sexual harassment is subtle and indirect, with a coercive aspect that is unstated. Some examples include the following:

   • Sexual harassment can occur between persons of equal power status (*e.g.*, student to student, staff to staff) or between persons of unequal power status (*e.g.*, faculty member to student, coach to student-athlete). Although sexual harassment often occurs in the context of the misuse of power by the

individual with the greater power, a person who appears to have less or equal power in a relationship can also commit sexual harassment.

- Sexual harassment can be committed by (or against) an individual or by (or against) an organization or group.
- Sexual harassment can be committed by an acquaintance, a stranger, or people who shared a personal, intimate, or sexual relationship.
- Sexual harassment can occur by or against an individual of any sex, gender identity, gender expression, or sexual orientation.

Examples of behavior that might be considered sexual harassment include, but are not limited to:

- Unwanted sexual innuendo, propositions, sexual attention or suggestive comments and gestures; inappropriate humor about sex or gender-specific traits; sexual slurs or derogatory language directed at another person's sexuality, gender, gender identity, sexual orientation or gender expression; insults and threats based on sex, gender, gender identity, sexual orientation or gender expression; and other oral, written or electronic communications of a sexual nature that an individual communicates is unwanted and unwelcome.
- Written graffiti or the display or distribution of sexually explicit drawings, pictures, or written materials; sexually charged name-calling; or the circulation, display, or creation of e-mails, text messages, or web sites of a sexual nature.
- Display or circulation of written materials or pictures degrading to an individual or gender group where such display is not directly related to academic freedom, or an educational/pedagogical, artistic, or work purpose.
- Unwelcome physical contact or suggestive body language, such as touching, patting, pinching, hugging, kissing, or brushing against an individual's body.
- Physical coercion or pressure of an individual to engage in sexual activity or punishment for a refusal to respond or comply with sexual advances.
- Use of a position of power or authority to: (1) threaten or punish, either directly or by implication, for refusing to tolerate harassment, for refusing to submit to sexual activity, or for reporting harassment; or (2) promise rewards in return for sexual favors.
- Acts of verbal, nonverbal, or physical aggression, intimidation, or hostility based on sex, sexual orientation, gender identity, or sex-stereotyping.

3. **Sexual Violence:** Physical sexual acts perpetrated against a person's will or when a person is incapable of giving consent. Physical sexual acts include, but are not limited to, vaginal or anal penetration, however slight, with a body part or object, or oral copulation by mouth-to-genital contact. This

9

Case 3:19-cv-00212-WWE   Document 26-3   Filed 05/10/19   Page 11 of 32

definition includes sexual assault, sexual battery, and sexual coercion. Sexual violence may involve individuals who are known to one another or have an intimate and/or sexual relationship (relationship violence), or may involve individuals not known to one another.

4. **Attempted Sexual Misconduct:** It is a violation of this policy to attempt to commit an offense of non-consensual intercourse, non-consensual sexual contact, or sexual exploitation.

5. **Other Inappropriate Sexual Contact:** Having or attempting to have sexual contact of any kind other than that defined as "Sexual Violence" with another individual without consent. Other inappropriate sexual contact may include kissing, touching, or making other inappropriate contact with the breasts, genitals, buttocks, mouth, or any other part of the body that is touched in a sexual manner and without permission.

6. **Sexual Exploitation:** Any act committed through non-consensual abuse or exploitation of another person's sexuality for the purpose of sexual gratification, personal benefit or advantage or any other illegitimate purpose. Sexual exploitation may involve individuals who are known to one another, have an intimate or sexual relationship, or may involve individuals not known to one another. Examples include, but are not limited to, observing another individual's nudity or sexual activity or allowing another to observe consensual sexual activity without the knowledge and consent of all parties involved.

   a. **Inducing Incapacitation:** This includes the provision of alcohol or drugs to an individual, with or without that individual's knowledge, for the purpose of causing impairment or intoxication or taking advantage of that individual's impairment or intoxication.

   b. **Media-Based Misconduct:** Photographing or taping someone (via audio, video or otherwise) involved in sexual activity, or in a state of undress, without his or her knowledge or consent. Even if a person consented to sexual activity, photographing or taping someone without his or her knowledge and agreement goes beyond the boundaries of that consent. Dissemination of photographs or video/audio of someone involved in sexual activity, or in a state of undress, without his or her knowledge or consent constitutes a separate and additional act of sexual misconduct.

   c. **Miscellaneous:** The inappropriate behaviors listed above are not an exhaustive list. The University may consider any other conduct that

Case 3:19-cv-00212-WWE   Document 26-3   Filed 05/10/19   Page 12 of 32

has a sexual or gender-based connotation under the Sexual Misconduct Policy.

7. **Stalking** More than one instance of unwanted attention, harassment, physical or verbal contact, or any other course of conduct directed at an individual that could be reasonably regarded as likely to alarm or place that individual in fear of harm or injury, including physical, emotional, or psychological harm.  This includes cyber-stalking, a particular form of stalking in which electronic media such as the internet, social networks, blogs, texts or other similar forms of contact are used to pursue, harass, or make unwelcome contact with another person.  Stalking and cyber-stalking may involve individuals who are known to one another or have an intimate or sexual relationship, or may involve individuals not known to one another.

# II. Role of the Title IX Compliance Coordinator & Title IX Compliance Deputy Coordinator

The Title IX Compliance Coordinator is charged with coordinating the University's program to comply with Title IX regulations. This includes leading the University's efforts to respond to reports of conduct that could trigger the Sexual Misconduct Policy. The Title IX Compliance Coordinator is also available to meet with any individual to provide information about the implementation of the Sexual Misconduct Policy (including the availability of interim measures, the investigation, and the resolution/sanction process), as well as discussing other resources within the University community and beyond. The Title IX Team, including the Title IX Compliance Coordinator and/or other qualified members of the University community, will assist, as necessary, with these efforts.

The role of the Title IX Compliance Coordinator includes, but may not be limited to:

- Providing oversight of Title IX compliance policies, procedures and notifications
- Overseeing implementation of compliance (grievance) procedures
- Identifying and addressing any patterns or systematic problems revealed by reports and complaints
- Conducting investigations of sexual misconduct complaints
- Evaluating an individual's request for confidentially in the context of the University's responsibility to provide a safe and nondiscriminatory environment for all of its members
- Providing guidance on Title IX compliance and University's related policies/procedures
- Facilitating interim measures/remedies
- Serving as a liaison to the state and federal agencies that enforce Title IX

- Promoting employee training and education on Title IX compliance
- Monitoring all other aspects of the University's Title IX compliance

In the absence of the Title IX Compliance Coordinator, the Deputy Title IX Compliance Coordinator shall be responsible for all responsibilities. If the Title IX Compliance Coordinator is not able to conduct or complete an investigation for any reason, or determines reason that he/she must be recused from the matter, the Title IX Compliance Coordinator shall designate the Deputy Title IX Compliance Coordinator or a trained investigator rom within the University, or an external party.

**The Title IX Compliance Coordinator**
Christine Donahue Brown, J.D.
Executive Assistant to the Executive Vice President & Title IX Compliance Coordinator
Phone: (203) 254-4000, ext. 3329
E-mail: cbrown@fairfield.edu

**The Deputy Title IX Compliance Coordinator**
William Johnson
Associate Dean of Students
Phone: (203) 254-4000, ext. 2890
E-mail: wjohnson@fairfield.edu

# III: Reporting Sexual Misconduct

A party in immediate danger should get to a safe place and call the Department of Public Safety at (203) 254-4090, or dial 911 for the Fairfield Police Department. Similarly, those in need of medical attention should call the Department of Public Safety or dial 911. It is important to preserve evidence when reporting sexual misconduct. If possible, individuals should not shower or wash their clothing following sexual misconduct as that may aid in the investigation. *Any party is encouraged to report sexual misconduct to the Department of Public Safety or Title IX Compliance Coordinator at any time*

Reporting parties of sexual misconduct can file a standard, formal incident report with the Department of Public Safety or the Title IX Compliance Coordinator at any time. There is no time limit when reporting sexual misconduct to the Department of Public Safety or Title IX Compliance Coordinator.

An incident report will include, among other things, the name of the reporting party and the name of the respondent, if known. Upon the filing of an Incident Report, the Department of Public Safety will act as first responder as detailed in this policy and refer the matter to the Title IX Compliance Coordinator for investigation. The Department of

Public Safety will also determine whether law enforcement or other authorities should be notified.

Direct reporting can be important for the safety of the entire University community. Reporting parties have the right to report sexual misconduct to the Department of Public Safety or the Title IX Compliance Coordinator without further participation in the investigatory, hearing, or resolution process. A Reporting Party can choose to initiate a criminal complaint through law enforcement and/or initiate complaint with a Title IX Compliance Coordinator. Reporting parties should understand, however, that by choosing to not participate in the process, the University's response to the incident may be limited.

Reporting parties of sexual misconduct are also encouraged to contact the Fairfield Police Department directly by calling 911. Filing a criminal report with the Fairfield Police Department is different than filing a report with the Department of Public Safety. If an individual files a criminal report with the Fairfield Police Department, the police will determine if a criminal investigation will occur and if the case will be referred for prosecution.

**Responsible Employees:** Any employee, except those who are empowered by law to maintain confidentiality, who witnesses or receives a report of sexual misconduct of against an individual 18 years of age or older, must report the incident as soon as possible to the Title IX Compliance Coordinator or the Department of Public Safety. This is required of all employees of the University.

While University employees must report information they receive, it is not their responsibility to investigate or confirm what is reported to them. University officials within the appropriate offices will determine the next steps, including ensuring that victims have been made aware of available on- and off-campus resources.

While a University employee may advise the Reporting Party of sexual misconduct that any conversation they have with the Reporting Party will be private (will not be shared unnecessarily with others), they may not tell a Reporting Party the conversation will be confidential unless that employee is subject to privilege by law to maintain confidentiality of an adult victim.

# IV. Process for Investigating and Resolving Complaints

These policies and procedures apply to all University community members, and all members of the University community are responsible for being familiar with and abiding by them at all times. This process describes how the University will investigate a report that an individual has engaged in conduct that could violate the Sexual Misconduct Policy and determine what, if any, safety measures and/or disciplinary sanctions are appropriate.

A. **Initial Steps/Interim Measures** After receiving a report of conduct that could fall under the Sexual Misconduct Policy, the Title IX Compliance Coordinator will take a number of initial steps in consultation with Department of Public Safety when necessary. These initial steps are not an investigation. Rather, these initial steps will enable the Title IX Compliance Coordinator to assess the need to take any immediate action to address the safety and health needs of the Reporting Party and the University community, and to determine the next steps for investigating the reported conduct and the need for any interim measures. These initial steps may include, but are not limited to, the following:

1. The Title IX Compliance Coordinator will contact the Reporting Party and encourage him/her/them to meet to discuss the nature and circumstances of the reported conduct, review relevant documentation that is available and address the need for any interim measures. The Title IX Coordinator is responsible to put interim measures in place after careful consideration of all the facts, and consultation with all necessary parties. Interim measures must be assigned in an expeditious manner, but certainly no later than seven (7) business days following the first report of a policy violation, in an effort to allow for academic continuity for all parties when possible. Examples of interim measures with respect to sexual misconduct may include no-contact orders, requests for academic or work adjustments, housing accommodations, dining, transportation, working and/or immigration situations, statutorily provided leave to employees pursuant and other actions to address the situations and the Reporting Party's immediate physical safety and emotional needs and concerns on an interim basis. Interim measures are subject to change over time as needed by wither of the parties. The changes are within the discretion of the Title IX Coordinator, and it will remain the title IX Coordinator's responsibility to keep both parties informed of any change, and to ensure that the changes are both necessary and effective.

2. Interim measures are subject to a Request for Reconsideration by a responding party. This request must be made to the Title IX Coordinator within three (3) business days of the issuance of interim measures. A decision on the Request for Reconsideration must be issued within seven (7) business days of the date of the filing of the request, and said decision will be

binding.  Interim measures will remain in full force and effect during the period of reconsideration.

3.  The Title IX Coordinator shall appoint an ombudsperson who will be responsible to issue decisions on all Requests for Reconsideration of interim measures.  The ombudsperson shall be an external resource meaning that he/she is an individual who is not a member of the Fairfield University community and is both fair and impartial.

4.  The Title IX Compliance Coordinator will assess the reported conduct to determine whether the circumstances pose a threat to the health or safety of the University community that warrants issuance of a timely warning in conjunction with Department of Public Safety, a no contact order for any persons, or any other interim protections, including, but not limited to, suspension of a student, placing an employee on leave, or restricting any individual from other privileges prior to completing an investigation.  During the interim action, the University reserves the right to prohibit the individual from entering upon the University's property or participating in any University activities absent written authorization from an appropriate University official.  The failure of an individual to comply with an interim restriction is a violation of this Policy and may lead to additional disciplinary action.  The decision to impose interim restrictions will be communicated by the Title IX Compliance Coordinator in writing and will be effective immediately.

5.  The Title IX Compliance Coordinator will notify the Reporting Party about:  (a) the availability of the Sexual Misconduct Policy; and (b) the right to report and the right to decline to report the matter to Department of Public Safety and/or to local law enforcement if the conduct is potentially criminal in nature (and that such a report will not change the University's obligation to potentially investigate the matter but it may delay the timing of the investigation if a law enforcement agency requests that the University delay its process for a reasonable amount of time to allow it to gather evidence of criminal conduct).

6.  The Title IX Compliance Coordinator will notify the Reporting Party of the available confidential and non-confidential resources both on and off-campus for seeking medical treatment, counseling, spiritual guidance, or other interim measures.

7.  If the Title IX Compliance Coordinator determines the reported conduct could, in any way, trigger the Sexual Misconduct Policy, he or she will contact the Reporting Party to discuss that determination.  In connection with

Case 3:19-cv-00212-WWE   Document 26-3   Filed 05/10/19   Page 17 of 32

allegations of sexual misconduct, if, at this time, the Reporting Party requests that the process not move forward, the University will weigh that request against the University's obligation to address any risk of harm to the Reporting Party or other individuals in the community and the nature of the incident or conduct at issue.

8. If the Title IX Compliance Coordinator determines that the reported conduct does not, in any way, trigger the Sexual Misconduct Policy, he or she will advise the Reporting Party of such in writing. Such a determination does not preclude the matter from being referred to other offices to be addressed under other applicable University policies.

**B. Optional Informal Resolution Procedure: (*The following Informal Resolution Procedure may not be used to resolve allegations of Sexual Violence, Other Inappropriate Sexual Contact, Inducing Incapacitation, Stalking or Relationship Violence, as each of those terms is defined in the Sexual Misconduct Policy.*)**   At any time prior to convening a Title IX Hearing Board ("Hearing Board"), a Party may request an informal resolution of a complaint rather than an investigation by contacting the Title IX Compliance Coordinator.   The informal procedure is voluntary in nature and is designed to achieve a resolution to which both the Reporting and Responding parties agree.  All Parties and the Title IX Compliance Coordinator must agree to informal resolution for this option to be used. The Title IX Compliance Coordinator will assess the request for informal resolution against the severity of the alleged violation and the potential risks to campus community members.  The assignment of interim measures is still available in mediation however one or both parties' compliance with any and all interim measures is required in order for mediation to be available.

If the Title IX Compliance Coordinator determines that informal resolution is appropriate, the Title IX Compliance Coordinator will notify the Parties. The Title IX Coordinator shall serve as the mediator in this informal process. In the event that the Title IX Coordinator determines that there is a conflict in his/her involvement with the mediation, the Title IX Coordinator shall refer the matter to a previously selected outside mediator.

The allegation will be deemed resolved when the Parties expressly agree to an outcome that is acceptable to them, and which is approved by the Title IX Compliance Coordinator.  Upon successful completion of a mediation both parties will sign an agreement which shall include the responsibilities of either or both parties going forward, if any.  The signed agreement shall be binding on all parties and is not subject to appeal.  The sixty (60) day period within which an investigation and hearing must be completed shall not commence until or unless mediation is unsuccessful and thereby terminated.

Case 3:19-cv-00212-WWE   Document 26-3   Filed 05/10/19   Page 18 of 32

A Party may withdraw from the informal resolution process at any time. The Title IX Compliance Coordinator may also terminate mediation and initiate an investigation at any time that deems it appropriate, in his or her sole discretion.

C. **The Investigation Phase**

1. **Notice of an Investigation:** If it is determined that the reported conduct could trigger the Sexual Misconduct Policy and an investigation is required, the Title IX Compliance Coordinator will prepare a written notice to the Reporting Party and Responding Party that will include a brief description of the allegations, the portions of the Policy that are alleged to have been violated, and any interim measures put in place about which either Party must be made aware. This written notice does not constitute a finding or a determination of responsibility.

2. **Information about Advisors in Connection with Allegations of Sexual Misconduct.** In connection with an allegation of sexual misconduct each Party, including any Reporting Party, may have a single advisor of such Party's choice present during the entire process and/or the University disciplinary proceeding, including any related meeting, interview, or hearing, held pursuant to the Sexual Misconduct Policy. Unless otherwise provided for and/or required by federal or state laws, parties may request the assistance of an advisor who is a member of the University community (e.g., faculty, staff or student). If the individual needs assistance with selecting an advisor, the Coordinator will provide the names of advisors from a pool of trained advisors.

   Advisors may not participate actively while present at any disciplinary proceeding and may not speak or otherwise communicate on the part of the Party that the advisor is advising. However, the advisor may ask to suspend any meetings, interviews, or hearings briefly to provide private consultation related to the disciplinary proceeding in progress. An advisor is subject to the same privacy expectations applicable to others in attendance. Accommodations, including scheduling of interviews or reviews, generally will not be made for any advisors if they unduly delay the process. The advisor is not permitted to attend a meeting or proceeding without the Party without the prior approval of the Title IX Compliance Coordinator, as determined in his/her sole discretion. The University reserves the right to take appropriate action regarding any advisor who disrupts the process, or who does not abide by the restrictions on their participation as determined in the sole discretion of the Title IX Compliance Coordinator.

3. **Support Services and Resources.** The Parties should review on-campus and off-campus resources regarding the available support services at the

University and in the community. At the request of either Party or witness, the Title IX Compliance Coordinator can discuss further the support services, resources, and options available.

4. **Designation of Investigator.** The Title IX Compliance Coordinator will appoint a previously designated and trained investigator to complete an investigation. All investigators – internal or external – will be selected from a group of qualified and trained individuals employed by the University or engaged by the University for the purpose of conducting investigations under the Sexual Misconduct Policy. The Title IX Compliance Coordinator will provide the Parties with the name of the person(s) assigned to investigate the reported conduct (the "Investigator(s)"). As soon as possible, but no later than three (3) business days after delivery of the identity of the Investigator(s), the Parties should inform the Title IX Compliance Coordinator (in writing) of any conflicts of interest with regard to the selected Investigator(s). The Title IX Compliance Coordinator will consider the nature of the conflict and determine if different individuals should be assigned as Investigator(s). The Title IX Compliance Coordinator's decision regarding any conflicts is final.

5. **Nature of the Investigation.** The investigation will include separate interviews with the Reporting Party, the Responding Party, and any witnesses whom the Investigator(s) believe will provide necessary and relevant information. The investigation may include the review of documentation or other items relevant to the reported conduct. The Investigator(s) will provide the Parties with written notice of meetings at which their presence is required.

6. **The Parties' Identification of Potential Witnesses and Documentation.** The Parties have the opportunity (and are expected) to provide the Investigator(s) with the identification of potential witnesses who have direct knowledge or specific information about the reported conduct and with whom they would like the Investigator(s) to speak. The Parties also have the opportunity (and are expected) to provide the Investigator(s) any documentation or other items or questions they would like to be considered including but not limited to a police report, if filed and medical records, if applicable. All information described in this section must be presented to the Investigator(s) in writing and include a brief description as to how the persons, documents, and/or items are relevant to the reported conduct. This information must be provided to the Investigator(s) during the Investigation Phase and without delay upon becoming aware of it. The Investigator(s) will exercise discretion in their determination of what information to consider

and which potential witnesses identified by the Parties can provide relevant information to the investigation.

7. **Investigation Prohibitions.** Neither Party will be permitted to question or cross-examine the other Party directly during the investigation or disciplinary proceedings. Moreover, the Investigator(s) generally will not gather or consider information related to either Party's sexual history outside of the conduct in question.

8. **Responding Party Voluntary Agreement to Policy Violation.** At any point prior to convening a Hearing Panel, a Responding Party may agree in writing to the alleged violation(s) of the Sexual Misconduct Policy. In cases of sexual violence, other inappropriate sexual contact, sexual exploitation, stalking or relationship violence, the individuals responsible for imposing sanctions will determine and impose sanction(s).

D. **Investigative Report and Determination of Responsibility**

1. **Content of the Investigative Report.** At the conclusion of the Investigation Phase, the Investigator(s) will prepare an Investigative Report, which should include a summary of the factual information presented during the Investigation Phase, a separate section where the Investigator(s) points out relevant consistencies or inconsistencies (if any) between different sources of information, and a separate section describing the Investigator(s)' perception of the demeanor of the individuals interviewed. The Investigative Report will not include a determination by the Investigator(s) as to whether a Party has violated the Sexual Misconduct Policy or what sanctions may be appropriate. The determination of the charges referred to the Hearing Board for a hearing will be made by the Title IX Compliance Coordinator, and any findings of responsibility will be made by the Hearing Board, as described below.

2. **Review by the Parties.** The Parties will have an opportunity to review the Investigative Report and may submit written comments about the content of the Investigative Report to the Investigator(s) within five (5) business days of the date they are notified that the Investigative Report is available for review. This review will take place at a secure location and in a secure manner determined by the University. Each Party may have such Party's advisor review the Investigative Report with them. Photographs or any other copies of the Investigative Report are not allowed by either Party or advisor. The comments submitted by the Parties may not exceed ten (10) double spaced pages unless a higher page limit is otherwise determined to be necessary and appropriate in the sole discretion of the Title IX Compliance Coordinator. After reviewing the submissions, if any, from the Parties, the

Investigator(s) may determine that either additional investigation is required or no further investigation is needed. If further investigation is conducted, the Investigator(s) will include any additional relevant information in the Investigative Report. The Investigative Report will then be submitted to the Title IX Compliance Coordinator. Any submissions made by either Party pursuant to this section, as well as any other documentation deemed relevant by the Investigator(s), will be attached to the Investigative Report.

3. **Convening the Title IX Hearing Board.** If the Title IX Compliance Coordinator determines that there is a potential violation of policy, the Title IX Compliance Coordinator will assign the matter to be heard by the Hearing Board. Said Hearing Board shall be comprised of five (5) member board of University community members trained to decide cases pursuant to this Policy. Said Hearing Board shall be comprised of representatives from each of the following: Student Affairs, Faculty, Administration, Human Resources and Athletics. In no instance shall the Panel include students. The Title IX Compliance Coordinator shall be present at all hearings as a non-voting attendee. Said Hearing Board shall be scheduled to meet eight (8) times per semester. Cases will be scheduled to be heard at regularly scheduled hearing dates. The Title IX Compliance Coordinator will provide the Parties with the names of the persons assigned as the Hearing Board members for their case.

   As soon as possible, but no later than three (3) business days after delivery of the identity of the assigned Hearing Board members, the Parties should inform the Title IX Compliance Coordinator in writing of any conflicts of interest in regard to the selected members assigned to the Hearing Board. If a conflict of interest is raised regarding any of the individuals assigned to the Hearing Board, the Title IX Compliance Coordinator will consider the nature of the conflict and determine if different individuals should be assigned to the Hearing Board. The Title IX Compliance Coordinator may consult with other University personnel to assess any conflicts of interest. The Title IX Compliance Coordinator's decision regarding any conflicts is final. The Title IX Compliance Coordinator will then submit the Investigative Report to the Hearing Board members and assign the matter to a date as appropriate.

4. **Review and Determination by the Hearing Board.** The Hearing Board will make a determination as to whether or not the Responding Party is responsible for violating the Sexual Misconduct Policy by having engaged in some or all of the reported conduct. The Hearing Board has the authority to accept the Investigative Report without seeking additional investigation, or to ask the Investigator(s) to conduct additional investigation on specific points. The Hearing Board, in its discretion, may invite the Investigator(s) to attend the Hearing Board if the Hearing Board believes it would be helpful to have an opportunity to ask the Investigator(s) any questions arising from the

Case 3:19-cv-00212-WWE   Document 26-3   Filed 05/10/19   Page 22 of 32

Investigative Report. The parties will have the ability to present any further evidence to the Hearing Board at the scheduled hearing. The Hearing Board also has the authority, in its discretion, to speak directly with any persons identified in the Investigative Report. The Hearing Board, as the ultimate decision-maker in the matter, is provided broad discretion. The Hearing Board has the authority to question either the reporting party or the responding party. At no point shall the reporting party or the responding party be entitled to question the other. Both parties maintain the right to attend the Hearing Board however their presence is not required.

5. **Notification of Decision.** Upon reaching a determination of responsibility, the Hearing Board will provide a written notification of its decision to the Title IX Compliance Coordinator. If sanctions are necessary, the matter will be referred by the Title IX Compliance Coordinator to the appropriate personnel taking into consideration the role of the responding party at the University. The notification will consist of a brief statement of the allegations and the determinations made by the Hearing Board.

6. **Standard of Proof.** All findings and determinations of responsibility under the Sexual Misconduct Policy will be made using a preponderance of the evidence standard. This standard requires the determination of whether it is more likely than not that a fact exists or a violation of the Sexual Misconduct Policy occurred. Please note that the preponderance of the evidence standard is not the standard used for criminal culpability in most jurisdictions and a determination of responsibility under the Sexual Misconduct Policy does not equate with a finding of a violation of criminal laws. Conversely, lack of a prosecution or conviction in a criminal proceeding does not necessarily imply that the University's Sexual Misconduct Policy was not violated. The two procedures are significantly different and utilize different standards for determining violations.

7. **Groups, Departments, Organizations and Teams.** A group, department, organization or team may be held collectively responsible for a violation of this Policy when one or more members of the group or other individuals associated with the group, department, organization or team are found responsible for a violation of this Policy and the Hearing Board separately determines that:

   - members of the group, organization or team acted in concert with respect to misconduct;
   - the individual found responsible for committing the misconduct was either acting on behalf of the group, organization or team or engaged in an activity sponsored, financed or endorsed by the group, organization or team or its leaders;

- the misconduct grows out of, occurs during, or is related to any activity or event sponsored, financed or endorsed by the group, organization or team;
- any leader, officer, or team captain of group, organization or team had knowledge of the misconduct or incident before or while it occurred and failed to take corrective action; and/or
- a pattern of individual misconduct by members of the group, organization or team is found to exist.

The designated leader or leaders (e.g., president, officer(s), or team captain(s)) shall represent the group, department, organization or team throughout the process. There shall be no right of individual appeal of any member of the student group, organization or team to a group sanction.

## E.  Determining Sanctions

1.  **Sanctioning Decision.** The University employees responsible for determining sanctions are as follows:

    i.  **Students**. Sanctions regarding students and student groups, organizations and teams will be determined by the Dean of Students. The Dean of Student's determination will be shared with the Parties in writing.   All parties may request the opportunity to meet with the Dean of Students within three (3) days following the determination.

    ii.  **Faculty**.  The Title IX Compliance Coordinator will provide the dean of the respective colleges or schools with a copy of the Hearing Board's written notification of its determination of responsibility as well as the Investigative Report.  The dean of the respective colleges or schools will determine an appropriate sanction(s). If the Dean determines that a sanction of dismissal is recommended, the sanction will be reviewed pursuant to the *Journal of Record*.  The Dean will then provide written notification to the Title IX Compliance Coordinator of the action taken with regard to the faculty member.

    iii.  **Exempt and Non-Exempt Employees:** Sanctions regarding employees, as defined by the University, will be determined by the Vice President of Human Resources.  The Title IX Compliance Coordinator will provide such vice president with a copy of the Hearing Board's written notification of its determination of responsibility as well as the Investigative Report.

2.  **Types of Sanctions.**

   i. **Employees, including Faculty Members.** Sanctions imposed with respect to Responding Parties who are employees or faculty members may include, but are not limited to, one or more of the following: dismissal from employment, non-renewal of an employment contract, suspension, probation, reprimand, warning, training and/or counseling, no-contact order, among others.

   ii. **Students.** Sanctions may include, but are not limited to, one or more of the following: expulsion, dismissal, probation, reprimand, warning, restitution, education/counseling, no-contact order, restriction from extracurricular programs or activities, loss of leadership opportunity or positions in activities, housing restriction/relocation, and/or loss or restriction from College employment.

   iii. **Groups, Departments, Organizations and Teams.** Sanctions for groups, organizations and teams may include suspension, revocation or denial of registration or recognition, probation, reprimand, warning, restitution, education, restriction, among other possible sanctions

3. **Considerations.** In determining an appropriate sanction, the University may take into account the following:
   - The nature and circumstances of the misconduct.
   - The impact of the misconduct on the Reporting Party.
   - The impact of the misconduct on the University community.
   - The disciplinary history of the Party deemed responsible.
   - Any other mitigating or aggravating circumstances in order to reach a fair and appropriate resolution in each case.
   - Range of sanctions typically imposed for similar violations.

4. **Additional Remedies.** The sanctioning authority may also identify additional remedies to address the effects of the conduct on the affected Party. Remedies may include extending or making permanent any interim or safety measures. If a Reporting Party declined or did not take advantage of a specific service or resource previously offered, the University may re-offer the service as applicable or necessary. The Title IX Compliance Coordinator also may consider broader remedial action for the campus community, such as increased supervision or monitoring, targeted or increased education and prevention efforts, and review of policies and procedures. In addition, the Title IX Compliance Coordinator may refer any matter raised, but not addressed hereunder, that may potentially violate any other University policy, rule, or procedure to the appropriate University officials to address such matters, irrespective of the finding under this Policy.

Case 3:19-cv-00212-WWE   Document 26-3   Filed 05/10/19   Page 25 of 32

F. **Notification of Investigation Outcome** Upon completion, the Title IX Compliance Coordinator will inform the Parties simultaneously and in writing of (1) the outcome of the disciplinary proceeding; and (2) the procedures for either Party to appeal the result of the disciplinary proceeding.  The Title IX Compliance Coordinator will also inform other University officials with a legitimate educational interest about the outcome of the finding.  Notice to these other individuals will be accompanied with a request that the information should remain private except in situations in which disclosure is necessary to protect the safety of the community

G. **Appeals**    The following appeal process applies to all appeals. Within five (5) business days of the delivery of the notice of the decision of responsibility and/or sanction, either Party may appeal the decision by submitting to the Title IX Compliance Coordinator a letter stating why the Party requesting the appeal believes the determination of responsibility and/or the sanctions were inappropriate.

A Reporting Party appealing under this section may only appeal on the following grounds:

1. Procedural error by the Investigator(s) or the Hearing Board that materially prejudiced the Party requesting review; and/or

A Responding Party appealing under this section may only appeal on the following grounds:

1. Procedural error by the Investigator(s) or the Hearing Board that materially prejudiced the Party requesting review; and/or

2. Newly discovered material information that was not known to the Party requesting review and not available to the Investigator(s), the Hearing Board, or the individual determining the sanction, and which likely would have changed the finding of responsibility or the sanction(s) imposed had it been available.

The Party submitting the appeal must set forth in detail the grounds for review and must attach all materials that he or she wishes to have considered in the appeal process.  The Title IX Compliance Coordinator will provide a copy of the appeal submitted by one Party to the other Party.

The Executive Vice President/Chief Operating Officer will be the Appellate Officer for matters in which a Responding Party is a student.

The Provost for Academic Affairs will be the Appellate Officer for matters in which a responding party is a faculty member.

The Executive Vice President/Chief Operating Officer will be the Appellate Officer for matters in which the Responding Party is an exempt or non-exempt employee, other than faculty.

As soon as possible, but no later than two (2) business days after delivery of the identity of the assigned Appellate Officer, the Parties should inform the Title IX Compliance Coordinator in writing of any conflicts of interest in regard to the assigned Appellate Officer.  The Title IX Compliance Coordinator will consider the nature of the conflict and determine if different individual(s) should be assigned. The Title IX Compliance Coordinator may consult with other University personnel to discuss any conflicts of interest. The Title IX Compliance Coordinator's decision regarding any conflicts is final.

The Appellate Officer will decide the merits of the appeal and, in so doing, may consult with the Investigator, the Hearing Board, the individual issuing the sanction, or any other individual that the Appellate Officer deems appropriate. Sanctions of all types (including, but not limited to, any form of suspension, dismissal, or separation from the University) can be imposed, in full or in part, while an appeal is pending at the sole discretion of the University.

The Appellate Officer may deny the appeal and affirm all or part of the determination of responsibility or the determination of sanction, or the Appellate Officer may refer the matter back to the Investigator, the Hearing Board, and/or the individual determining the sanction for further consideration.  If the matter is referred back to the Investigator, the Hearing Board, and/or the individual determining the sanction for further consideration, the Appellate Officer will provide specific instructions with the referral.  In the event of a referral for further consideration, the Title IX Compliance Coordinator will be consulted and further proceedings may be commenced, as appropriate under the circumstances and consistent with this Policy.

The decision of the Appellate Officer regarding the appeal will be in writing and is final. The Title IX Compliance Coordinator will inform the Parties simultaneously and in writing of the outcome of the appeal.

H. **Time frame for Completion of Investigation and Disciplinary Process:** The University cannot guarantee the definitive timeframe of this process, but ordinarily will complete its investigation and disciplinary process, if any, within sixty (60) days of the delivery of the written notice of the investigation to the Parties.  This time period does not include the time for any appeal.  The U.S. Department of Education has made clear that the length of investigations may vary with the complexity and

unique factors in each case. Examples of such factors include, without limitation, circumstances in which critical witnesses are unavailable or if law enforcement requests the University temporarily halt its investigation for a brief period of time. Accordingly, all time frames set forth in this Policy may be altered by the Title IX Compliance Coordinator for good cause. The University's overarching goal is that all complaints be investigated in a prompt, fair, and impartial manner.

### I.   Additional Matters

1. **Duty of Honesty.** All Parties and witnesses are obligated to be completely honest during the course of the entire process set forth in this Policy. Any person who knowingly makes a false statement – either explicitly or by omission – in connection with any part of the process may be subject to separate University disciplinary action. A report made in good faith, however, is not considered false merely because the evidence does not ultimately support the allegation of violation of the policy.

2. **Duty of Cooperation.** All Parties and witnesses are obligated to cooperate with the Title IX Compliance Coordinator and any persons charged with implementing the Sexual Misconduct Policy and these procedures. Any person who knowingly interferes with the actions taken to implement the reporting, investigation, or resolution of matters under the Sexual Misconduct Policy may be subject to separate and/or additional University disciplinary action.

3. **Respect for Privacy.** The University values the privacy of individuals involved in the reporting, investigation, and/or resolution of matters subject to the Sexual Misconduct Policy. The U.S. Department of Education has provided guidance indicating that there are situations in which it may be necessary for an institution to override a request for privacy or confidentiality in order to meet its obligations under the law. In the event circumstances result in the University overriding a request for privacy or confidentiality to meet its obligations, the University will do so with the utmost sensitivity and respect for the circumstances and the individuals involved.

4. **Recording the Proceedings.** The Parties are not permitted to make video, audio, or other electronic, photographic, or digital recordings of any meetings or proceedings held under the Sexual Misconduct Policy or these procedures or the Investigative Report. The Title IX Compliance Coordinator may make exceptions to this prohibition in limited circumstances if he or she concludes, in his or her sole discretion, that recording is warranted, and upon written request of the Party seeking the recording that explains the need for the recording.

5. **Follow-up with Reporting Party.** Where the Title IX Compliance Coordinator deems appropriate, he or she may contact the Reporting Party to provide an update on the process, the timing and extent of which will be determined by the Title IX Compliance Coordinator and depend upon the nature of the allegations and the situation.

6. **Prohibition against Retaliation.** The University will not tolerate retaliation in any form against any persons for their participation or involvement in the reporting, investigation, and/or resolution of matters reported or subject to the Sexual Misconduct Policy. The University will take appropriate steps to prevent and/or address retaliatory conduct immediately. The University includes retaliation in its definition of prohibited conduct under this Policy.

7. **Amnesty for Students Reporting Sexual Violence, Relationship Violence and Stalking.** The University encourages reporting under the Sexual Misconduct Policy and seeks to remove barriers to reporting. Individuals may be hesitant to report sexual violence, relationship violence, harassment or stalking out of a concern that they, or witnesses, might be charged with a violation of the University's drug and alcohol policies. While the University does not condone such behavior, the University places a priority on the need to address sexual violence, relationship violence, harassment and stalking. The University generally will not hold an individual who in good faith reports or is a witness during an investigation of sexual violence, relationship violence and stalking under the Sexual Misconduct Policy accountable for disciplinary violations that do not place the health and safety of any other person at risk or create a danger to the University community. The University retains the right to require individuals to attend counseling or drug/alcohol related courses even in circumstances in which disciplinary conduct will not be pursued under this part.

8. **Special Situations.** The University retains the right to determine, in its sole discretion, if it will address a report of conduct under the Sexual Misconduct Policy administratively and outside of the process described herein when the safety of the University community is at risk, if the material facts are undisputed, if there are extenuating circumstances involving either of the Parties, or if the Title IX Compliance Coordinator, in consultation with appropriate administrators, determines it is in the best interest of the University and/or the community to do so.

9. **Jurisdiction** The University's disciplinary jurisdiction is limited to conduct which occurs on campus and certain off-campus conduct. Off-campus conduct falls within the scope of this policy when the University determines that such conduct is sufficiently serious that it interferes with, or limits, an individual's ability to participate in or benefit from the University's

educational programs or activities. Examples of off-campus conduct that the University may exercise jurisdiction over include, but are not limited to, off-campus parties and school-sponsored programs at off-campus locations and travel associated therewith.

# IV. Resources

If a student has experienced or has been accused of sexual violence or assault, there are many resources and options available to them on and off-campus. One goal of this policy is to ensure that victims who report to any University employee are made aware of and receive necessary or desired services. Below is a list of confidential and private resources available both on and off-campus. If individuals would like to speak with an off-campus victim's advocate immediately, they can call (203) 333-2233.

There are several departments within the University community that can be called upon to respond to incidents of behavior that could be subject to the Sexual Misconduct Policy and can serve as supports to individuals in many different ways. These resources are available to both Reporting Parties and Responding Parties.

A. **Confidential:**  Some University resources are individuals designated as "confidential resources." These University employees serve in professional roles in which communications are provided confidential status under the law (e.g., licensed mental health care providers, licensed medical providers, pastoral counselors and clergy) and may not report identifying information about behavior that may implicate the Sexual Misconduct Policy without the consent of the individual who supplied the information in question or otherwise in compliance with law. However, these confidential resources are instructed to inform individuals of their right to file a complaint under the Sexual Misconduct Policy and/or with the police and may assist in that process.  You can seek confidential services through the following resources:

**On-Campus:**
Counseling & Psychological Services (students only)
(203) 254-4000, ext. 2146

Student Health Center (students only)
(203) 254-4000, ext. 2241

Jesuit community/Clergy
(203) 254-4000, ext. 2664
(203) 259-7805

**Off-Campus:**
The Center for Family Justice
(203) 333-2233 (sexual assault hotline)
(203) 384-9559 (domestic violence hotline)

Triangle Community Center
(203) 853-0600

Bridgeport Hospital
(203) 384-3566

CT Office of the Victim Advocate
(860) 550-6632

B. **Private/Non-Confidential Resources: not governed by confidentiality.**
   **On-Campus:**
   Public Safety
   (203) 254-4090

   Title IX Compliance Coordinator
   (203) 254-4000, ext. 3329

   Office of the Dean of Students
   (203) 254-4211

   Office of Human Resources
   (203)254-4000, ext. 2227

   Campus Ministry
   (203) 254-4000, ext. 3405

   Office of Residence Life
   (203) 254-4215

   **Off-Campus Resources:**
   Fairfield Police Department
   911 or (203) 254-4800

# V. Education and Other Preventative Initiatives

The University is committed to the prevention of sexual misconduct through education
and awareness.  Throughout the year, programs designed to promote sexual violence
awareness and prevention are presented by a variety of campus resources including the

Office of the Dean of Students, Human Resources, Counseling & Psychological Services, Residence Life, Campus Ministry, and the Department of Public Safety. Technology based training is used to educate at all levels. The University also promotes participation of student groups in prevention activities and bystander education. Prevention programs stress the added risks involved when the use of alcohol and/or illegal drugs is present. Flyers about sexual violence are posted in residence halls, and academic and administrative buildings. The educational programs review strategies for prevention and inform University community members of options and resources available should such violence occur.

Under the Jeanne Clery Act, the University issues warnings to the campus community regarding crimes that pose a serious ongoing threat to students and employees in a manner that is timely and will aid in the prevention of similar occurrences. The Department of Public Safety is responsible for evaluating reported crimes to determine if a timely warning is appropriate. Reported cases of sexual violence may require such a warning if the circumstances of the incident suggest that there is a serious or continuing threat to the safety of the campus community.

Whether to issue such an alert is considered on a case by case basis and depends upon a number of factors including the continuing danger to the campus community, whether the responding party was apprehended and the possible risk of compromising law enforcement efforts. Timely warnings never include the name of the reporting party. When a timely warning is issued, it will be explained to the reporting party by the Title IX Compliance Coordinator or the Department of Public Safety.

Reporting parties of sexual misconduct may also be eligible to obtain a protective order or apply for a temporary restraining order or seek enforcement of an existing protective order issued by a court of competent jurisdiction. Fairfield University will honor any lawful protective or temporary restraining order.

# VI. Bias Education and Resource Team

There may be instances where acts of bias, which are defined as language or behaviors that demonstrate bias against persons or groups because of race, color, ethnicity, religion, faith, national origin, political orientation, or sexual orientation occur, but the perpetrator(s) cannot be identified and/or the acts of bias do not rise to the level of discrimination or harassment for purposes of Title IX or this policy. In those instances, any member of the University community impacted by the acts of bias are nonetheless encouraged to report the behavior to the Bias Resource Team. The Bias Resource Team serves to advocate for victims of bias, whether individual or group. The Bias Resource Team is uniquely situated to assist the University community in situations including, but not necessarily limited to, those in which the perpetrator of the bias cannot be identified and/or when the behavior in question does not constitute discrimination or

rise to the level of harassment for Title IX purposes. The Bias Resource Team is made up of campus partners from academics, human resources, student affairs, and the student body. The Bias Response team is led by the Title IX Compliance Coordinator or her/his designee.  Any member of the University community wishing to contact the Bias Resource Team may do so by contacting the Title IX Compliance Coordinator identified here in or by submitting an online form.